CLARENCE F. BUCKLEY AND PAULINE A. BUCKLEY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61688. Filed December 13, 1957.

*James J. Waters, Esq.*, for the petitioners.
*Sylvan Siegler, Esq.*, for the respondent.

460

OPINION.

HARRON, *Judge:* Section 165 (b) provides that the amount actually distributed or made available to a distributee out of an employees' pension trust shall be taxable to him under section 22 (b) (2) as if it were an annuity, but if such distribution to a distributee is paid to him on account of his "separation from the service," then such distribution shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months. The question here is whether the distribution to Buckley in 1951 from the Scharff-Koken pension trust fund comes within the exception set forth in section 165 (b),[1] so as to be taxable as capital gain.

[1] SEC. 165. EMPLOYEES' TRUSTS.
(b) TAXABILITY OF BENEFICIARY.—The amount actually distributed or made available to any distributee by any such trust shall be taxable to him, in the year in which so dis-

The phrase "separation from the service" means separation from the service of "his employer." *Edward Joseph Glinske, Jr.*, 17 T. C. 562, 565. Buckley became an employee of International in July 1946 and was not paid for his services thereafter by Scharff-Koken, which was dissolved. There is no difficulty in concluding that Buckley's employment by Scharff-Koken was terminated in June 1946, and that there was a "separation from the service" of that employer. *Mary Miller*, 22 T. C. 293, 301. Also, the lump-sum payment of $20,000 which Buckley received in 1951 was such payment, within 1 taxable year of Buckley, the distributee, as is required by section 165 (b). That the distribution of $20,000 was not made during the same year in which Buckley's services to Scharff-Koken were terminated would not prevent, in and of itself, bringing into play here the latter part of section 165 (b) which allows capital gains treatment of a distribution from an employees' pension fund. See *Lester B. Martin*, 26 T. C. 100, where the taxpayer's services to his employer were terminated in 1949, when, also, the taxpayer's rights to a distribution from an employees' pension fund became fixed, but a lump-sum payment was not made to the former employer until 1950. Cf. *Estate of Frank B. Fry*, 19 T. C. 463, affirmed per curiam 205 F. 2d 517.

In spite of the above, the question here turns on the fact that International elected to, and did, take over and continue the Scharff-Koken pension trust as of June 30, 1946. International continued that plan for 5 years, making contributions to the plan, and during those 5 years, Buckley was an employee of International. Buckley continued to be an employee of International after it terminated the pension trust which had been originally created by Scharff-Koken. Under these facts and circumstances, we cannot conclude that the distribution in 1951 of $20,000 to Buckley was, in fact, made "on account of the employee's separation from the service" as the latter part of section 165 (b) provides.

The issue in this case must be decided against the petitioner as was done in *Edward Joseph Glinske, Jr., supra.* The facts here are different from those in *Mary Miller, supra.* The rationale of the *Mary Miller* case cannot be applied here, nor can the *Glinske* case be distinguished, as was done in the *Mary Miller* case. Here as in the

---

tributed or made available, under section 22 (b) (2) as if it were an annuity the consideration for which is the amount contributed by the employee, except that if the total distributions payable with respect to any employee are paid to the distributee within one taxable year of the distributee on account of the employee's separation from the service, the amount of such distribution to the extent exceeding the amounts contributed by the employee, shall be considered a gain from the sale or exchange of a capital asset held for more than 6 months. * * *

*Glinske* case, the new transferee-employer, International, assumed the Scharff-Koken plan and retained it for 5 years thereafter, and when payment was made to Buckley, the payment was made on account of termination of the plan; it was not made on account of termination of the services of Buckley to International, which did not occur until 1953. In the *Glinske* case the new employer continued a plan for 50 days.

It is held, on the basis of the facts of this case, that the distribution in 1951 to Buckley, to which he did not make any contribution, constituted ordinary income to him. Respondent's determination is sustained.

Petitioners did not file a declaration of estimated tax for 1951. Such declaration was required under section 58 (a), 1939 Code, at least on or before September 15, 1951, because in June petitioners received gross income of more than $100 from sources other than wages, and their total gross income could reasonably be expected to exceed $600. Petitioners offered no evidence under this issue and did not attempt to establish that their failure to make and file a declaration of estimated tax was due to reasonable cause and not willful neglect. It is held that petitioners are liable for an addition to tax for 1951 under section 294 (d) (1) (A) for failure to file a declaration of estimated tax.

The Commissioner also made addition to the tax for 1951 under section 294 (d) (2) for substantial underestimation of estimated tax. Petitioners presented no evidence in opposition to the respondent's determination.

Section 294 (d) (2) prescribes an addition to the tax where 80 per cent of the tax exceeds the estimated tax. Regulations 111, section 29.294–1 (b) (3) (A), provides that in the event no declaration of estimated tax is filed where the filing of such declaration is required, the amount of the estimated tax is considered to be zero. The failure of petitioners to file a declaration of estimated tax necessarily resulted in a substantial understatement of estimated tax and, therefore, an addition to the tax under the mandatory provisions of section 294 (d) (2) is required. *H. R. Smith*, 20 T. C. 663; *G. E. Fuller*, 20 T. C. 308, affirmed on other grounds 213 F. 2d 102; *Walter H. Kaltreider*, 28 T. C. 121, 126.

The amounts of the additions to tax under section 294 (d) (1) (A) and (d) (2) determined by the respondent do not have to be adjusted because of our holding under the main issue. The additions to tax under section 294 (d) (1) (A) and (d) (2) are sustained.

*Decision will be entered for the respondent.*