# COMMISSIONER OF INTERNAL REVENUE
## *v.* ACKER.

No. 13. Argued October 19, 1959.—Decided November 16, 1959.

*Ralph S. Spritzer* argued the cause for petitioner. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Rice* and *Robert N. Anderson.*

*Fred N. Acker,* respondent, argued the cause and filed a brief *pro se.*

MR. JUSTICE WHITTAKER delivered the opinion of the Court.

This case presents the question whether, under the Internal Revenue Code of 1939, the failure of a taxpayer to file a declaration of estimated income tax, as required by § 58,[1] not only subjects him to the addition to the tax

_____

[1] Section 58, as amended, provides, in pertinent part, that:

"Every individual . . . shall, at the time prescribed in subsection (d), make a declaration of his estimated tax for the taxable year if [his gross income from wages or other sources can reasonably be expected to exceed stated sums, showing] the amount which he estimates as the amount of tax under this chapter for the taxable year, without regard to any credits under Sections 32 and 35 for taxes withheld at source . . . ; the amount which he estimates as

prescribed by § 294 (d)(1)(A) for failure to file the declaration, but also subjects him to the further addition to the tax prescribed by § 294 (d)(2) for the filing of a "substantial underestimate" of his tax.

Section 294 (d)(1)(A) provides, in substance, that if a taxpayer fails to make and file "a declaration of estimated tax," within the time prescribed, there shall be added to the tax an amount equal to 5% of each installment due and unpaid, plus 1% of such unpaid installments for each month except the first, not exceeding an aggregate of 10% of such unpaid installments.[2]

Section 294 (d)(2), in pertinent part, provides:

"(2) Substantial underestimate of estimated tax.
"If 80 per centum of the tax (determined without regard to the credits under sections 32 and 35) . . . exceeds the estimated tax (increased by such credits), there shall be added to the tax an amount equal to

[such] credits . . . ; and [that] the excess of the [estimated tax] over the [estimated credits] shall be considered the estimated tax for the taxable year." 26 U. S. C. (1952 ed.) § 58.

[2] Section 294 (d)(1)(A), as amended, provides, in pertinent part, that:

"(A) Failure to file declaration.

"In the case of a failure to make and file a declaration of estimated tax within the time prescribed . . . there shall be added to the tax 5 per centum of each installment due but unpaid, and in addition, with respect to each such installment due but unpaid, 1 per centum of the unpaid amount thereof for each month (except the first) or fraction thereof during which such amount remains unpaid. In no event shall the aggregate addition to the tax under this subparagraph with respect to any installment due but unpaid, exceed 10 per centum of the unpaid portion of such installment. For the purposes of this subparagraph the amount and due date of each installment shall be the same as if a declaration had been filed within the time prescribed showing an estimated tax equal to the correct tax reduced by the credits under sections 32 and 35." 26 U. S. C. (1952 ed.) § 294 (d)(1)(A).

such excess, or equal to 6 per centum of the amount by which such tax so determined exceeds the estimated tax so increased, whichever is the lesser. . . ." 26 U. S. C. (1952 ed.) § 294 (d)(2).

Section 29.294–1(b)(3)(A) of Treasury Regulation 111, promulgated under the Internal Revenue Code of 1939, contains the statement that:

"In the event of a failure to file the required declaration, the amount of the estimated tax for the purposes of [§ 294 (d)(2)] is zero."

Respondent, without reasonable cause, failed to file a declaration of his estimated income tax for any of the years 1947 through 1950. The Commissioner imposed an addition to the tax for each of those years under § 294 (d)(1)(A) for failure to file the declaration, and also imposed a further addition to the tax for each of those years under § 294 (d)(2) for a "substantial underestimate" of the tax. The Tax Court sustained the Commissioner's imposition of both additions. The Court of Appeals affirmed with respect to the addition imposed for failure to file the declaration, but reversed with respect to the addition imposed for substantial underestimation of the tax, holding that § 294 (d)(2) does not authorize the treatment of a taxpayer's failure to file a declaration of estimated tax as the equivalent of a declaration estimating no tax, and that the regulation, which purports to do so, is not supported by the statute and is invalid. 258 F. 2d 568. Because of a conflict among the circuits[3] we

---

[3] After the Sixth Circuit had delivered its opinion in this case but before it had decided the Commissioner's petition for rehearing, the Third Circuit, in *Abbott* v. *Commissioner*, 258 F. 2d 537, and the Fifth Circuit, in *Patchen* v. *Commissioner*, 258 F. 2d 544, held that the failure of a taxpayer to file a declaration of estimated tax subjected him not only to the "addition to the tax" imposed by

granted the Commissioner's petition for certiorari. 358 U. S. 940.

The first and primary question that we must decide is whether there is any expressed or necessarily implied provision or language in § 294 (d)(2) which authorizes the

§ 294 (d)(1)(A) for failure to file a declaration, but also to the "addition to the tax" imposed by § 294 (d)(2) for a "substantial underestimate" of his tax. Less than two months earlier, the Ninth Circuit, too, had so held in *Hansen* v. *Commissioner*, 258 F. 2d 585.

From the beginning of litigation involving the question here presented, a large majority of the published opinions of the District Courts have held that § 294 (d)(2) does not authorize the treatment of a taxpayer's failure to file any declaration at all as the equivalent of a declaration estimating his tax to be zero, and that the regulation attempts to amend and extend the statute and is therefore invalid. See, *e. g.*, *United States* v. *Ridley*, 120 F. Supp. 530, 538; *United States* v. *Ridley*, 127 F. Supp. 3, 11; *Owen* v. *United States*, 134 F. Supp. 31, 39, modified on another point *sub nom.* *Knop* v. *United States*, 234 F. 2d 760; *Powell* v. *Granquist*, 146 F. Supp. 308, 312, aff'd, 252 F. 2d 56; *Hodgkinson* v. *United States*, 57–1 U. S. T. C. ¶ 9294; *Jones* v. *Wood*, 151 F. Supp. 678; *Glass* v. *Dunn*, 56–2 U. S. T. C. ¶ 9840; *Stenzel* v. *United States*, 150 F. Supp. 364; *Todd* v. *United States*, 57–2 U. S. T. C. ¶ 9768; *Erwin* v. *Granquist*, 57–2 U. S. T. C. ¶ 9732, aff'd, 253 F. 2d 26; *Barnwell* v. *United States*, 164 F. Supp. 430. Three District Court opinions have held the other way, *Palmisano* v. *United States*, 159 F. Supp. 98; *Farrow* v. *United States*, 150 F. Supp. 581; and *Peterson* v. *United States*, 141 F. Supp. 382; and the Tax Court has consistently so held. See, *e. g.*, *Buckley* v. *Commissioner*, 29 T. C. 455; *Garsaud* v. *Commissioner*, 28 T. C. 1086, 1090.

The 1954 Internal Revenue Code has eliminated the question here presented as respects taxable years beginning after January 1, 1955, by providing for a single addition to the tax of 6% of the amount of underpayment, whether for failure to file a declaration of estimated tax or timely to pay the quarterly installments or for a substantial underestimation of the tax. 26 U. S. C. (1952 ed., Supp. V) § 6654. But the question is still a live one because of the pendency of a substantial number of cases which arose under and are governed by the 1939 Code.

treatment of a taxpayer's failure to file a declaration of estimated tax as, or the equivalent of, a declaration estimating his tax to be zero.

We are here concerned with a taxing Act which imposes a penalty.[4] The law is settled that "penal statutes are to be construed strictly," *Federal Communications Comm'n* v. *American Broadcasting Co.*, 347 U. S. 284, 296, and that one "is not to be subjected to a penalty unless the words of the statute plainly impose it," *Keppel* v. *Tiffin Savings Bank*, 197 U. S. 356, 362. See, *e. g., Tiffany* v. *National Bank of Missouri*, 18 Wall. 409, 410; *Elliott* v. *Railroad Co.*, 99 U. S. 573, 576.

Viewing § 294 (d) (2) in the light of this rule, we fail to find any expressed or necessarily implied provision or language that purports to authorize the treatment of a taxpayer's failure to file a declaration of estimated tax as, or the equivalent of, a declaration estimating his tax to be zero. This section contains no words or language

---

[4] Although the Commissioner concedes that the addition to the tax imposed by § 294 (d) (1) (A) for failure to file a declaration of estimated tax is a penalty, he contends that the addition to the tax imposed by § 294 (d) (2) for substantial underestimation of the tax may not be so regarded. He attempts to support a distinction upon the ground that the amount of the addition imposed by § 294 (d) (1) (A) of 5%, plus 1% per month of unpaid installments, not exceeding an aggregate of 10% of such unpaid installments, does not represent a normal interest rate, whereas, he argues, the addition of the maximum of 6% that may be imposed under § 294 (d) (2) is a normal interest rate and should not be regarded as a penalty but as interest to compensate the Government for delayed payment.

We think this argument is unsound, for both of the additions are imposed for the breach of statutory duty, and both are characterized by the same language. Each is stated in the respective sections to be an "addition to the tax" itself; and, being such, it cannot be interest. Moreover, being "addition[s] to the tax," both additions are themselves as subject to statutory interest as the remainder of the tax. 26 U. S. C. (1952 ed.) § 292 (a).

to that effect, and its implications look the other way. By twice mentioning, and predicating its application upon, "the estimated tax" the section seems necessarily to contemplate, and to apply only to, cases in which a declaration of "the estimated tax" has been made and filed. The fact that the section contains no basis or means for the computation of any addition to the tax in a case where no declaration has been filed would seem to settle the point beyond all controversy. If the section had in any appropriate words conveyed the thought expressed by the regulation it would thereby have clearly authorized the Commissioner to treat the taxpayer's failure to file a declaration as the equivalent of a declaration estimating his tax at zero and, hence, as constituting a "substantial underestimate" of his tax. But the section contains nothing to that effect, and, therefore, to uphold this addition to the tax would be to hold that it may be imposed by regulation, which, of course, the law does not permit. *United States* v. *Calamaro,* 354 U. S. 351, 359; *Koshland* v. *Helvering,* 298 U. S. 441, 446–447; *Manhattan Co.* v. *Commissioner,* 297 U. S. 129, 134.

The Commissioner points to the fact that both the Senate Report [5] which accompanied the bill that became the Current Tax Payment Act of 1943,[6] and the Conference Report [7] relating to that bill, contained the statement which was later embodied in the regulation. He then argues that by reading § 294 (d)(2) in connection with that statement in those reports it becomes evident

[5] S. Rep. No. 221, 78th Cong., 1st Sess., p. 42; 1943 Cum. Bull. 1314, 1345.

[6] Section 5 (b) of the Current Tax Payment Act of 1943, c. 120, 57 Stat. 126, introduced into the 1939 Code what, as amended, is now § 294 (d) (2) of that Code.

[7] H. R. Conf. Rep. No. 510, 78th Cong., 1st Sess., p. 56; 1943 Cum. Bull. 1351, 1372.

that Congress intended by § 294 (d)(2) to treat the failure to file a declaration as the equivalent of a declaration estimating no tax. He urges us to give effect to the congressional intention which he thinks is thus disclosed. However, these reports pertained to the forerunner of the section with which we are now confronted, and not to that section itself. Bearing in mind that we are here concerned with an attempt to justify the imposition of a second penalty for the same omission for which Congress has specifically provided a separate and very substantial penalty, we cannot say that the legislative history of the initial enactment is so persuasive as to overcome the language of § 294 (d)(2) which seems clearly to contemplate the filing of an estimate before there can be an underestimate.

The Commissioner next argues that the fact that Congress, with knowledge of the regulation, several times amended the 1939 Code but left § 294 (d)(2) unchanged, shows that Congress approved the regulation, and that we should accordingly hold it to be valid. This argument is not persuasive, for it must be presumed that Congress also knew that the courts, except the Tax Court, had almost uniformly held that § 294 (d)(2) does not authorize an addition to the tax in a case where no declaration has been filed, and that the regulation is invalid.[8] But the point is immaterial, for Congress could not add to or expand this statute by impliedly approving the regulation.

These considerations compel us to conclude that § 294 (d)(2) does not authorize the treatment of a taxpayer's failure to file a declaration of estimated tax as the equivalent of a declaration estimating his tax to be zero. The questioned regulation must therefore be regarded "as

---

[8] See Note 3

94

no more than an attempted addition to the statute of something which is not there." *United States* v. *Calamaro, supra,* 354 U. S., at 359.

*Affirmed.*

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE CLARK and MR. JUSTICE HARLAN join, dissenting.

English courts would decide the case as it is being decided here. They would do so because English courts do not recognize the relevance of legislative explanations of the meaning of a statute made in the course of its enactment. If Parliament desires to put a gloss on the meaning of ordinary language, it must incorporate it in the text of legislation. See Plucknett, A Concise History of the Common Law (5th ed.), 330–336; Amos, The Interpretation of Statutes, 5 Camb. L. J. 163; Davies, The Interpretation of Statutes, 35 Col. L. Rev. 519; Lord Haldane in *Viscountess Rhondda's Claim,* [1922] 2 A. C. 339, 383–384. Quite otherwise has been the process of statutory construction practiced by this Court over the decades in scores and scores of cases. Congress can be the glossator of the words it legislatively uses either by writing its desired meaning, however odd, into the text of its enactment, or by a contemporaneously authoritative explanation accompanying a statute. The most authoritative form of such explanation is a congressional report defining the scope and meaning of proposed legislation. The most authoritative report is a Conference Report acted upon by both Houses and therefore unequivocally representing the will of both Houses as the joint legislative body.

No doubt to find failure to file a declaration of estimated income to be a "substantial underestimate" would be to attribute to Congress a most unlikely meaning for that phrase in § 294 (d) (2) *simpliciter.* But if Congress chooses by appropriate means for expressing its

purpose to use language with an unlikely and even odd meaning, it is not for this Court to frustrate its purpose. The Court's task is to construe not English but congressional English. Our problem is not what do ordinary English words mean, but what did Congress mean them to mean. "It is said that when the meaning of language is plain we are not to resort to evidence in order to raise doubts. That is rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists." *Boston Sand & Gravel Co. v. United States,* 278 U. S. 41, 48.

Here we have the most persuasive kind of evidence that Congress did not mean the language in controversy, however plain it may be to the ordinary user of English, to have the ordinary meaning. These provisions were first enacted in the Current Tax Payment Act of 1943, c. 120, 57 Stat. 126, as additions to § 294 (a) of the Internal Revenue Code of 1939. The Conference Report, H. R. Conf. Rep. No. 510, p. 56, and the Senate Report, S. Rep. No. 221, p. 42, both gave the provision dealing with substantial underestimation of taxes the following gloss:

> "In the event of a failure to file any declaration where one is due, the amount of the estimated tax for the purposes of this provision will be zero."

The revision of the section eight months later by the Revenue Act of 1943, c. 63, 58 Stat. 21, did not affect its substance, and this provision, therefore, continued to carry the original gloss. While the Court adverts to this congressional definition, it disregards its controlling significance.*

---

*The essential reliance of the Court is on its characterization of § 294 (d) (2) as a penalty. No adequate justification for this exists. Section 294 (d) (2) on its face indicates that it is in the nature of

I agree with the construction placed upon the provision by the Third, Fifth, and Ninth Circuits. *Abbott* v. *Commissioner,* 258 F. 2d 537 (C. A. 3d Cir. 1958); *Patchen* v. *Commissioner,* 258 F. 2d 544 (C. A. 5th Cir. 1958); *Hansen* v. *Commissioner,* 258 F. 2d 585 (C. A. 9th Cir. 1958).

---

an interest charge, designed to compensate the Treasury for delay in receipt of funds which a reasonably accurate estimate would have disclosed to be due and owing. Significantly, this charge is imposed regardless of fault, while § 294 (d)(1)(A), a true penalty provision, authorizes no addition to tax when the failure to file is shown "to be due to reasonable cause and not to willful neglect." Had taxpayer here had reasonable cause for failure to file, the 10% addition under § 294 (d)(1)(A) could not have been imposed. Yet taxes would have been withheld by him pending the filing of a final return for the year. Section 294 (d)(2) provides the Government a definite means for ascertaining the compensation for this loss of funds.