Sadie M. (or Sally) Schroeder v. Commissioner.
Schroeder v. Commissioner
Docket No. 67343.
United States Tax Court
T.C. Memo 1960-226; 1960 Tax Ct. Memo LEXIS 63; 19 T.C.M. (CCH) 1266; T.C.M. (RIA) 60226; October 25, 1960
Max A. Reinstein, Esq., for the petitioner. Joel Yonover, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent *64 determined deficiencies in income tax as follows: Additions to the Tax
Sec. 293(a)
Sec. 294(d)(2)
or
Sec. 294
or
Year
Deficiency
Sec. 6651 *
Sec. 6653(a) *
(d)(1)(A)
Sec. 6654 *
1950
$ 102.00
$ 5.10
0
$ 6.18
1951
772.77
38.64
$ 76.12
50.75
1952
877.56
43.88
99.14
66.09
1953
1,354.16
67.71
115.10
81.25
1954
955.29 *
$238.82 *
47.76 *
88.36
57.32
1955
877.39 *
43.87 *
0
24.54 *
$4,939.17
$238.82
$246.96
$378.72
$286.13
The issues remaining for decision are: (1) whether payments received under an agreement between the petitioner and her former husband were taxable income to her, and (2) whether the petitioner is liable for certain additions to the tax. Other issues have been disposed of by agreement or concessions. Findings of Fact The petitioner, Sadie M. (or Sally) Schroeder, is an individual now residing in Chicago, Illinois. For the taxable years 1950, 1951, 1952, 1953, and 1955 she filed her individual income tax returns on a cash basis for calendar years with the director of internal revenue at Indianapolis, *65 Indiana. Petitioner filed her 1954 individual income tax return on April 11, 1958. This was subsequent to the statutory notice of deficiency which was issued on February 19, 1957. This delinquency was without reasonable cause. Petitioner was married to Elmer J. Schroeder in 1928. On October 20, 1950, petitioner was granted a divorce from Elmer by the Vandenburgh Probate Court, Vandenburgh County, Indiana. The petitioner and Elmer entered into an agreement August 16, 1950. In the divorce proceedings the Probate Court approved this agreement and ordered that the parties perform their respective obligations thereunder subject to the continuing jurisdiction of the Probate Court. The pertinent provisions of this agreement are as follows: 2. The "Husband" will pay, or cause to be paid, to the "Wife" One hundred twenty-two (122) periodic payments, if and when a divorce is granted either to the plaintiff or defendant in said pending divorce action, the first of which periodic payments shall be in the sum of Eight Thousand Four dollars and eighty-one cents ($8004.81) of which Fifteen Hundred ($1500.00) dollars shall be payable to William C. Welborn and Milford M. Miller, partners doing *66 business as Welborn and Miller, for full payment of their attorney fees in representing said "Wife", both in the divorce proceeding and all other matters, including the negotiations leading up to and including the execution of this agreement; and the sum of One Thousand Five Hundred Four Dollars and eighty-one cents ($1504.81) is to be paid direct to Bonwit Teller, of New York City, New York, in full payment of their account against the said "Wife"; and the balance of Five Thousand ($5000.00) dollars shall be paid to said "Wife", which total payment of Eight Thousand Four Dollars and eighty-one cents ($8004.81) shall be paid on the date said divorce is granted, if one is granted; the remaining One Hundred twenty-one (121) periodic payments are to be in the sum of Three Hundred Twenty-five ($325.00) dollars each and shall be paid consecutively on or before the first day of each and every month, beginning with the month following the granting of a divorce either to the plaintiff or defendant in said divorce action, if and when a divorce is granted; all of which payments shall be made without relief from valuation or appraisement laws and shall bear interest at the rate of six percent *67 (6%) per annum after same become due. * * *
7. The "Wife" agrees to pay any and all amounts due and owing for any and all purchases, or other liability incurred by her for wearing apparel, living expenses, support, maintenance and otherwise, except attorney fees, and does hereby agree to indemnify, protect and save harmless the "Husband" from any and all such liability hereafter. * * *
10. The "Husband" agrees to pay all of the periodic payments and the insurance premiums herein provided for, and such obligations shall not be impaired or terminated by the remarriage of the "Wife", but shall be terminated and ended upon the death of the "Wife". Upon the death of the "Husband" prior to the death of the "Wife" the obligation of the "Husband" for all the unpaid periodic payments, imposed herein, together with any insurance premiums advanced by the "Wife" and not reimbursed by the "Husband" shall all be due and payable out of the estate of the "Husband" and constitute a charge and lien against his estate. 11. The "Husband" herein represents that he has furnished to the "Wife", through her attorney, a complete list of his property and assets, which list of assets and statement *68 of earnings is attached hereto, made a part hereof and marked Exhibit "B". The "Wife" herein represents and warrants that she has relied upon no representations made by the "Husband" or upon his behalf as to the value of any of the securities, property and earnings listed by him, or to his net worth, financial condition, property, assets or earnings and that she has relied upon her own knowledge and investigation as to the value of said securities, property, assets and earnings of said "Husband". * * *
13. It is agreed and understood that the periodic payments, payments of life insurance premiums and the designation of the "Wife", Sally M. Schroeder, as irrevocable beneficiary in said policies of insurance and the provisions herein set out in this agreement to be made and paid to said "Wife", Sally M. Schroeder, are in lieu of all property rights or claims arising out of the marital relationship of said parties, as well as any claims by way of inheritance or otherwise that said "Wife" or "Husband" may now have, or hereafter have by reason of any matter or thing occurring prior to the date hereof, limited, however, only to the terms and conditions of this agreement, all as *69 herein provided. Elmer was a liquidator of the Lamasco Bank, Evansville, Indiana, during its reorganization prior to 1935. He was vice president of the bank from 1935 to 1948 and has been the president of that bank from 1948 to the present time. From 1929 to 1948 Elmer acquired 129 shares of the common stock of the Lamasco Bank. His cost of acquisition varied from $65 to $100 per share. His total investment in the Lamasco Bank stock at the time of the divorce was approximately $10,000. At different times the petitioner borrowed money from the Lamasco Bank. The petitioner surrendered securities she owned as collateral for these loans. A portion of these loans was for the benefit of Elmer who purchased additional shares of the Lamasco common stock. The amounts of these loans and the number of shares purchased were: Date of
Date of
No. of
Loan
Amount
Purchase
Shares
4/25/40
$1,722.75
4/25/40
23
6/18/40
435.00
6/18/40
5
8/14/41
750.00
8/12/41
10
From 1939 to 1942 the petitioner and Elmer had income from oil royalties. Elmer repaid a part of the above loans from his share of the proceeds of these oil royalties. At the time the divorce *70 decree was granted all the loans were repaid and Elmer owed no money to the petitioner. The agreement entered into between the parties was to effect a full settlement of the rights of the parties arising out of the marital relationship, and not to repay monies owed the petitioner by Elmer. In 1938 land consisting of 34.74 acres situated in Posey County, Indiana, was purchased by the petitioner and Elmer for $450. Capital improvements of $8,000 were constructed on the premises, consisting of improvements to the house of $3,700 and a dam at a cost of $4,300. The Commissioner determined that the amounts paid to petitioner under the agreement constituted taxable income in 1950, 1951, 1952, and 1953, under the provisions of section 22(k), I.R.C. 1939. The same determination was made for the years 1954 and 1955, except that section 71, I.R.C. 1954 is applied. Opinion The first issue relates to the agreement between the petitioner and Elmer J. Schroeder entered into on August 16, 1950. The petitioner contends that the purpose of the payments provided for in this agreement was to repay loans made by the petitioner to her former husband, Elmer. She claims that *71 Regulations 111, § 29.22(k)-1, I.R.C. 1939, [1] and § 1.71-1(b)(4), I.R.C. 1954, [2] exclude such payments from income. The respondent conversely says they are periodic payments received in discharge of a legal obligation arising from the marital relationship and should have been included in income under section 22(k), I.R.C. 1939[3] and section 71, I.R.C. 1954. [4]
*72 The question is basically factual. The burden rests upon the petitioner to substantiate her position that the purpose of the agreement was to repay monies owing her from Elmer. The petitioner claims the amount owed to her by her husband was $20,000. She bases this contention upon the fact that Elmer admitted borrowing money from her and that he cannot prove repayment of the loans. She also stresses the point that she refused to enter into any agreement containing the term "alimony". She argues further that at the time she signed the agreement she was in a state of nervous collapse and was "pressured" into signing. In looking to the agreement she maintains that the clause which provides that in the event of the death of Elmer J. Schroeder the balance of the payments is to constitute a charge against the estate illustrates that the agreement was to repay monies due her. She also contends that paragraph 13 of the agreement clearly demonstrates that the agreement was to settle existing debts between the parties and further that the loans were negotiated for the benefit of Elmer to permit him to purchase additional shares of the Lamasco Bank stock. In his testimony, Elmer admits borrowing *73 money from the petitioner to purchase stock, but says the amounts were $1,722.75, $435, and $750, a total of $2,907.75, and not $20,000 as the petitioner claims. The dates of the loans Elmer admits making can be closely correlated with purchases of the Lamasco Bank stock, whereas the dates of the remaining notes put in evidence cannot be so correlated. His stock holdings totaled 129 shares with an approximate cost of $10,000. Of this number 31 shares had been acquired by Elmer prior to the negotiation of any of the admitted loans. These factors destroy the cogency of petitioner's contention that $20,000 was needed to purchase such stock. All the loans were repaid to the Lamasco Bank and each party claims credit for the repayment. Petitioner introduced her stock account which covered only the period from 1936 through 1938, which does not encompass the great majority of the loans. Elmer produced a columnar work sheet, which included a tabulation of his oil royalties as received and showed that payment had been from such oil royalties on the loans which he testified he had made. A notation was made on the top of this work sheet that the proceeds from the sale of a lot had also been *74 applied to the payment of these loans. The amount of these payments was $1,737.68 and substantiates Elmer's testimony that he repaid part of the loans made for his benefit with his share of the proceeds from certain oil royalties. A deposit book of the Lamasco Bank was introduced by the petitioner. It contained a series of unrelated computations. On one page there was a date, 10-7-44, and a notation that read Notes Owing
By E.J.S.
Old Note
11,155.22
New Note
10,164.00 Petitioner testified that it was written by Elmer. Elmer denied that he had written it and stated that he never made a note of that amount to the petitioner or anyone else. The petitioner offered no further evidence to clarify this ambiguity. The petitioner places much reliance upon the fact that the agreement does not contain the word "alimony." However, the mere omission of a term from such an agreement which contains all the indicia of an agreement executed to discharge a husband from his legal obligations arising from the marital relationship is not material in ascertaining its legal effect. Thomas E. Hogg, 13 T.C. 361 (1949); Floyd H. Brown, 16 T.C. 623 (1951); *75 Julia Nathan, 19 T.C. 865 (1953); Rev. Rul. 58-192, 1958-1 C.B. 34. The petitioner's argument that certain clauses in the agreement bespeak a debtorcreditor relationship has no merit. An alimony agreement that incorporates a clause making provision for the death of the payor is not unusual. Julia Nathan, supra.In regard to paragraph 13, the interpretation which we place on it is that the agreement is a settlement between the parties of the legal obligations which have arisen from their marital status. The clause states in substance that it is agreed and understood that the periodic payments are in lieu of all property rights or claims arising out of the marital relationship of the parties, as well as any claims by way of inheritance that either party may have. An analysis of the instrument itself refutes the petitioner's contention that its purpose was to repay a debt owing from Elmer. The first payment under the agreement totaling $8,004.81 was composed of a $1,500 payment for attorney fees for representing the petitioner in the divorce proceedings, $1,504.81 to a department store in full payment of the petitioner's account, and $5,000 *76 to the petitioner. The total of the payments to be made to or for the benefit of the petitioner under the agreement is $47,329.81, of which $8,004.81 was payable at the time of the divorce and the remainder was to be paid in 121 periodic payments of $325 each, secured by an escrow agreement under which 79 shares of the Lamasco Bank stock having an approximate value of $40,000 were deposited. No mention of debt repayment is made in the agreement at all. We find that the evidence offered by the petitioner fails to support her position that the purpose of the agreement was to repay monies due the petitioner. It follows that the respondent's determination that the amounts received under the agreement were income, is sustained. The remaining issue relates to the respondent's determination of certain additions to tax. The petitioner concedes her liability under section 6651, I.R.C. 1954, for failure to file a tax return for the year 1954. The respondent concedes that additions to tax under section 294(d)(2), I.R.C. 1939, for substantial underestimate of tax for the years 1951, 1952, 1953, and 1954 are barred under the Supreme Court's holding in Commissioner v. Acker, 361 U.S. 87 (1959). *77 In regard to the additions under section 293(a), I.R.C. 1939 for the years 1950, 1951, 1952, and 1953, and section 6653(a), I.R.C. 1954, for the years 1954 and 1955 for negligence or intentional disregard of rules and regulations, the petitioner alleges that she believed the payments received from Elmer were not taxable income to her, and contends that the additions to tax are not justified. The petitioner has not shown that she sought or received competent advice to the effect that the payments were not taxable income to her. The additions to tax are sustained. The respondent determined additions to tax under section 294(d)(1)(A), I.R.C. 1939, for the years 1951, 1952, 1953, and 1954 due to the petitioner's failure to file a declaration of estimated tax for those years. No evidence was introduced by the petitioner to show that such failure was "due to reasonable cause and not to willful neglect." We sustain the respondent on this issue. The respondent also determined an addition to tax under section 294(d)(2), I.R.C. 1939, for 1950 for the substantial underestimate of estimated tax for that year. An estimate was filed for 1950 and therefore the Acker *78 case, supra, is not applicable. H. R. Smith, 20 T.C. 663 (1953). The respondent is sustained as to this addition. The respondent also determined an addition to tax for failure to pay estimated income tax for 1955, pursuant to section 6654, I.R.C. 1954. There is no showing by the petitioner that any of the exceptions for not imposing the addition have been met, and we sustain the respondent. Another issue as to the adjusted cost basis of the petitioner in land and improvements located in Posey County, Indiana, has been resolved by an agreement between the parties. They agreed and we have found as a fact that the original cost was $450 and improvements of $8,000 were constructed on the premises. This amount is to be allocated $3,700 to the house and $4,300 to a dam constructed upon the property. Decision will be entered under Rule 50. Footnotes
*. Internal Revenue Code of 1954.↩
1. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS: income to former wife - Section 22(k) applies only where the legal obligation being discharged arises out of the family or marital relationship in recognition of the general obligation to support, which is made specific by the instrument or decree. Thus, section 22(k)↩ does not apply to that part of any periodic payment which is attributable to the repayment by the husband of, for example, a bona fide loan previously made to him by the wife, the satisfaction of which is specified in the divorce decree as a part of the general settlement between the husband and wife. 2. (4) Scope of section 71(a). Section 71(a) applies only to payments made because of the family or marital relationship in recognition of the general obligation to support which is made specific by the decree, instrument, or agreement. Thus, section 71(a)↩ does not apply to that part of any periodic payment which is attributable to the repayment by the husband of, for example, a bona fide loan previously made to him by the wife, the satisfaction of which is specified in the decree, instrument, or agreement as a part of the general settlement between the husband and wife. 3. Sec. 22(k)↩ Alimony, Etc., Income. - In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife * * * 4. Sec. 71(a) General Rule. - (1) Decree of Divorce or Separate Maintenance. - If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments * * * received after such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.↩