**A. M. and Antoinette B. JACOB**

v.

**Charles A. DONNELLY, formerly Collector of Internal Revenue at New Orleans.**

**Civ. A. No. 4366, Division "C".**

United States District Court
E. D. Louisiana,
New Orleans Division.
July 29, 1963.

Gibson Tucker, Jr., Tucker & Schone-kas, New Orleans, La., for plaintiff.

Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, Myron C. Baum, Stanley F. Krysa, Jerome J. Reso, Jr., Dept. of Justice, Washington, D. C., Louis C. LaCour, U. S. Atty., Peter E. Duffy, Asst. U. S. Atty., E. D. of La., New Orleans, La., for defendant.

WEST, District Judge.

■ Complainant, A. M. Jacob, seeks a refund of income tax in the amount of $839.70, plus interest, allegedly erroneously paid by him for the year 1950. (Mrs. Jacob is a plaintiff in this case only because a joint return was filed.) It is contended by complainant that in 1950 he received the sum of $8,773.04 as his distributive share of a pension trust fund, paid to him as a result of his separation from the service of his employer, and that such payment, under Section 165(b) of the Internal Revenue Code of 1939 should have been taxed as a long term capital gain rather than as ordinary income. Respondent contends that the payment received by the complainant, while admittedly being the total distributive share to which he was entitled, and admittedly having been paid within one taxable year, was, nevertheless, paid to him not because of his separation from the service of his employer, but rather because the pension trust fund plan itself was terminated. Thus, the issue here involved becomes one of fact. If the funds were, as a matter of fact, received by complainant because of his separation from the service of his employer, these funds should have been accorded the status of a long term capital gain. On the other hand, if they were received by complainant because the pension trust plan itself was terminated, then these funds were properly treated by respondent as ordinary income.

■ The case was submitted to this Court on an agreed stipulation of fact, and after considering this stipulation, together with the briefs filed by both counsel, it is the opinion of this Court that the funds involved were properly treated by the Commissioner of Internal Revenue as ordinary income. In connection with this opinion, the Court makes the following Findings of Fact and Conclusions of Law.

FINDINGS OF FACT

The following pertinent findings of fact are in accordance with the stipulation of facts submitted by counsel and filed herein.

1.

Prior to, on and after December, 1941, Paramount Pictures, Inc. was engaged in the business of producing, distributing and exhibiting motion pictures. Among the exhibition corporations in which Paramount Pictures, Inc. had an interest was Paramount-Richards Theatres, Inc. The other principal stockholder of Paramount-Richards Theatres, Inc. was Mr. E. V. Richards. Paramount-Richards Theatres, Inc. had seven subsidiaries, among which were Capital Theatres, Inc. and Saenger-Ehrlich Enterprises.

2.

In December, 1941, Paramount-Richards Theatres, Inc. established an employee pension trust plan which covered employees of Paramount-Richards Theatres, Inc. and all of its subsidiaries, in-

cluding the employees of Capital Theatres, Inc. and Saenger-Ehrlich Enterprises.

### 3.

On June 10, 1946, Paramount-Richards Theatres, Inc. was notified by letter from the Commissioner of Internal Revenue that the pension trust plan met the requirements of Section 165(a) of the Internal Revenue Code and that it was entitled to the exemptions therein provided.

### 4.

On May 18, 1949, Paramount-Richards Theatres, Inc. was notified by letter from the Commissioner of Internal Revenue that the pension trust fund plan had been re-examined and reconsidered and that it was then determined that in actual practice the plan failed to meet the requirements of Section 165(a) and that therefore, it was not entitled to the exemptions provided in that Section.

### 5.

On November 1, 1949, the Board of Directors of Paramount-Richards Theatres, Inc. resolved to liquidate the pension trust plan as of January 1, 1949. The Internal Revenue Service was advised of this resolution on December 15, 1949, and the total funds of the trust were distributed to the beneficiaries, including complainant herein, on January 1, 1950.

### 6.

Complainant, A. M. Jacob, received from Saenger-Ehrlich, Inc., as his distributive share of the trust fund, the sum of $7,164.59, of which amount he, as an employee, had contributed the sum of $49.43. From Capital Theatres, Inc. he received, as his distributive share of the trust fund, the sum of $1,608.45, of which amount he, as an employee of that company, had contributed the sum of $638.94.

### 7.

When Mr. Jacob filed his income tax return for 1950, he included therein, and paid tax thereon, as ordinary income, the sum of $8,084.67, being the total amount received by him as a result of the liquidation of the pension trust fund, less the amount of $688.37 contributed by him as an employee to the fund.

### 8.

In April, 1951, Mr. Jacob filed an amended return in which he removed the sum of $8,084.67 from his previously reported ordinary income for the year 1950, and reported that amount as a long term capital gain for that year. This was done on the grounds that this distributive share of the pension trust fund paid to him was the total distribution to which he was entitled; that it was paid all in one year; and that it was paid to him on account of his separation from the service of his employer.

### 9.

On November 6, 1951, a refund of tax in the amount of $839.70 was made by respondent to Mr. Jacob, based upon this amended return, but then subsequently, upon re-examination of the return, a deficiency in taxes in the amount of $839.70, plus $90.51 interest, was assessed against Mr. Jacob, who paid this deficiency on April 30, 1953. On December 24, 1953, complainant filed a claim for refund of the $930.21, which claim was rejected by respondent on January 28, 1954.

### 10.

At the time the pension trust plan was established, complainant was employed as the manager of a theatre operated by Saenger-Ehrlich, Inc., in Shreveport, Louisiana, and as an employee of Saenger, was, of course, covered by the pension trust plan. He remained so employed until May 22, 1946. On May 23, 1946, he became manager of the Hart Theatre in Baton Rouge, Louisiana, which theatre was operated by Capital Theatres, Inc. Consequently, as an employee of Capital, he was also covered by the pension trust plan.

### 11.

No distributive share of the trust fund was paid to complainant upon his termination of employment by Saenger-Ehrlich, Inc. in 1946.

**12.**

During the period here involved, Paramount Pictures, Inc. was involved in certain anti-trust proceedings, and as a result of these proceedings, Paramount Pictures, Inc. was directed to either acquire 95 per cent of the stock in Paramount-Richards Theatres, Inc. or to sell its 50 per cent stock interest to Mr. Richards. As a result, Paramount, on January 3, 1950, purchased the interest of Mr. Richards in Paramount-Richards Theatres, Inc., and on January 18, 1950, changed the name of the corporation to Paramount Gulf Theatres, Inc. Also, in further compliance with the decision in the anti-trust proceedings, Paramount-Richards Theatres, Inc. sold its stock in Capital Theatres, Inc. and simultaneously therewith leased the Hart Theatre from Capital Theatres, Inc. Paramount-Richards Theatres, Inc. continued to operate the Hart, with complainant, Mr. Jacob, as the manager. Mr. Jacob was, from that time on, directly in the employ of Paramount-Richards Theatres, Inc., later to become known as Paramount Gulf Theatres, Inc., as the manager of the Hart Theatre.

**13.**

The fact that, as a result of the decision in the anti-trust proceedings, certain stock transfers within the various branches of this rather complex corporate structure became necessary, and the fact that, as a result thereof, plaintiff, on January 3, 1950, became a direct employee of Paramount-Richards Theatres, Inc. rather than of Capital Theatres, Inc. had nothing whatsoever to do with the distribution to the employees of the funds of the pension trust fund. If such were the case, then certainly complainant would have received his distributive share of the trust fund upon his termination of employment with Saenger-Ehrlich, Inc. in 1946.

**14.**

When the distribution of the assets of the trust fund was made on January 1, 1950, it was made to *all* beneficiaries thereof, regardless of whether they had terminated their employment or not. It was a complete liquidation of the entire pension trust fund, and a complete termination of the pension trust plan itself.

**15.**

It is abundantly clear from the facts in this case that the decision to terminate the pension trust plan and to liquidate completely the trust fund which was a part thereof resulted from the final decision of the Commissioner of Internal Revenue to the effect that the plan did not meet the requirements of Section 165(a) of the Internal Revenue Code, and that therefore, it was no longer entitled to the exemptions and deductions therein contained. For this reason, and for this reason alone, the distribution of the money contained in the trust fund was made.

**16.**

Complainant's so-called change of employment was quite immaterial to, and entirely unconnected with, the distribution of the trust funds. It is, furthermore, extremely doubtful that complainant did, in fact, terminate his employment as contemplated by Section 165(a) of the Internal Revenue Code.

## CONCLUSIONS OF LAW

**1.**

Jurisdiction over this matter is found to be present.

**2.**

As a matter of law, complainant was not separated from the service of his employer as contemplated by the provisions of Section 165(a) of the Internal Revenue Code. Oliphint v. Commissioner, 24 T.C. 744.

**3.**

The distribution of the funds here involved were not made to complainant on account of his separation from the service of his employer, but instead, the distribution of funds was made solely because of the termination of the pension trust plan itself, and because of the complete liquidation of the trust fund, and

hence, the funds so received by complainant may not be treated as a long term capital gain, but instead must be treated and taxed as if it were an annuity. Section 165(a) Internal Revenue Code of 1939, as amended. Glinske v. Commissioner, 17 T.C. 562; McGowan v. United States, 7 Cir., 277 F.2d 613; Buckley v. Commissioner, 29 T.C. 455.

4.

Judgment shall be rendered herein in accordance with these Findings of Fact and Conclusions of Law in favor of respondent, rejecting the demands of complainant, and dismissing this suit at complainant's cost.