**DELK INVESTMENT CORPORATION, (a Missouri corporation), Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 62 C 267(3).**

United States District Court
E. D. Missouri, E. D.

March 5, 1964.

John Lewis Kelly, Washington, D. C., James F. McCarthy, Clayton, Mo., for plaintiff.

Richard D. FitzGibbon, Jr., U. S. Atty., John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for defendant.

REGAN, District Judge.

This is a suit for refund of amounts assessed and collected as personal holding company taxes under the provisions of Section 541 and 545(b) (5), Title 26 U.S.C.A. (All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.) Jurisdiction of the cause is established under Section 1346(a) (1) Title 28 U.S.C.A. The material facts are not in dispute.

The plaintiff, Delk Investment Corporation, is a personal holding company under the definition of Section 542, and as required, timely filed with the District Director at St. Louis, United States corporation income tax returns, Form 1120, and Schedule PH, Form 1120 (Computation of personal holding company tax) for the years 1955, 1956 and 1957, and paid the amount shown on the returns as due the United States. Following an

audit, certain adjustments were made by the Internal Revenue Service which were disputed by petitioner. The Commissioner assessed the following deficiencies:

| YEAR | Deficiency | Interest | Total |
|------|-----------|----------|-------|
| 1955 | $55,396.21 | $12,360.16 | $67,756.37 |
| 1956 | 3,885.88 | 633.88 | 4,519.76 |
| 1957 | 86,890.64 | 8,969.70 | 95,950.34 |

Thereafter, plaintiff paid the amounts assessed, and filed claims for refund for each of the three years. The claims were reviewed by the District Director and disallowed.

The only controversy regards the computation of the adjustment allowed under 545(b) (5). The pertinent parts of the section read as follows:

"§ 545. Undistributed personal holding company income

"(a) Definition.—For purposes of this part, the term 'undistributed personal holding company income' means the taxable income of a personal holding company adjusted in the manner provided in subsection (b), minus the dividends paid deduction as defined in section 561.

"(b) Adjustments to taxable income.—For the purposes of subsection (a), the taxable income shall be adjusted as follows:

"(1) Taxes.—There shall be allowed as a deduction Federal income and excess profits taxes * * *

"(5) Long-term capital gains.— There shall be allowed as a deduction the excess of the net long-term capital gain for the taxable year over the net short-term capital loss for such year, minus the taxes imposed by this subtitle attributable to such excess. The taxes attributable to such excess shall be an amount equal to the difference between—

"(A) the taxes imposed by this subtitle (except the tax imposed by this part) for such year, and

"(B) such taxes computed for such year without including such excess in taxable income."

The parties agree that (A) is the regular corporate income tax of the personal holding company. The dispute arises in determining (B).

The reading of the statute by the taxpayer resulted in an interpretation and use of words which may be paraphrased as follows: The comparison of (A) and (B) is to determine the taxes attributable to the fact that the taxpayer had excess long-term capital gain.[1] Attributable, in its ordinary sense in the statute, means "to ascribe by way of cause". Thus, the computation seeks to determine the tax caused by the presence of excess long-term capital gain in taxable income. Subsection (B) requires the comparison of regular corporate taxes with "such taxes computed for such year without including such excess in taxable income". The phrase "without including" means without embracing, without comprehending, or to use the antonym, excluding, it means to bar from entering or prevent from becoming a component part. The term "taxable income" is expressly defined by the Code to be "gross income, minus the deductions allowed by this chapter". In order to meet the requirements under subsection (B), therefore, net capital gains should not enter into the computation equation of subsection (B). They would not be added as a part of gross income. The purpose of the comparison is thereby served; the difference represents the taxes caused by the excess long-term capital gain.

[1]. The phrase "excess of the net long-term capital gain for the taxable year over the net short-term capital loss" is referred to herein as "excess long-term capital gain" or "net capital gain".

The interpretation of the Commissioner, on the other hand, construes the statute to require a comparison of the computations under subsections (A) and (B) to determine the taxes "allocable" to excess long-term capital gain, rather than the additional taxes "caused by" such excess. He seeks to divide taxable income into the various components of gross income and to allocate the taxes and deductions to these various components. The Commissioner's allocation assumes that all deductions, including special deductions, are first charged to reduce the ordinary income component of taxable income, and that only the remainder of the deductions, if any, are allowed against net capital gain. Therefore, insofar as taxable income does not exceed an amount equal to the excess long-term capital gain, it is capital gain. In following the direction of the statute to compare regular corporate income taxes, subsection (A), with the computation of taxes in subsecion (B), the Commissioner determined the figure on which subsection (B) taxes are to be computed by subtracting an amount equal to the excess long-term capital gain from taxable income, and calls the remainder ordinary income.

The Commissioner's rationale dividing taxable income into various components of gross income is without citation of authority unless Section 545 can be said to require such division. In the case of a corporation, and specifically a personal holding company, it is difficult to see how the salaries, rents or charitable contributions are more related or chargeable to dividends than to capital gain. Furthermore, the very fact that the legislative enactment of policy providing for the dividends-received deduction allows net capital gain to affect the size of the deduction related in terms to "ordinary" income is inconsistent with the Commissioner's theory. By the time the figure "taxable income" has been reached the components have lost their identity and cannot be traced to amount.

It is of significance to note that the approaches of the taxpayer and the Commissioner, except for one deduction allowable under the circumstances of this case, would reach the same result. The deduction which effects the difference in the computations is the dividends-received deduction allowed under Section 243 as limited by Section 246. A corporation under these Sections is allowed as a deduction an amount equal to eighty-five per cent of the amount received as dividends (with certain exceptions) but not exceeding eighty-five per cent of the taxable income computed without regard to certain special deductions. Therefore, the presence of capital gains in gross income increases the amount of the dividends-received deduction allowable and decreases taxable income where the amount of net capital gain is not offset by deductions other than the dividends-received deduction.

The difference in the result under the approaches of the taxpayer and the Commissioner is not presented from the words of Section 545(b) (5). It is only presented when that Section is read with other Sections of the Code and it becomes apparent that the taxable income figure depends upon the relationship in size of dividends-received and other components of gross income. At this point the wording of Section 545(b) (5) must be construed.

In the case of Litchfield Securities Corporation v. United States, D.C., 216 F.Supp. 801, which was affirmed on appeal by the Court of Appeals for the Second Circuit, the identical questions involved here were presented. The Court of Appeals in Litchfield, supra, apparently considered neither approach to be unreasonable, but that the closer approach to the letter of the statute was as suggested by the Commissioner. The Court, in that case, deemed the contention of the Commissioner to better serve the spirit and purpose of the law as determined from the reading of the related sections as a whole. In addition, the Court of Appeals in Litchfield, supra, found that the legislative history reinforced its interpretation as being correct and consistent with the intent of Congress.

■ It is the position of the taxpayer that its interpretation accords with the plain meaning of the statute, and further, that if doubt arises as to its meaning, the statute should be construed strictly against the Commissioner because the statute imposes a penalty. Plaintiff cites in support of its contention that it is entitled to be favored with the "rule of lenity", Commissioner of Internal Revenue v. Acker, 361 U.S. 87, 80 S.Ct. 144, 4 L.Ed.2d 127; Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211; and Crooks, Collector v. Harrelson, et al., 282 U.S. 55, 51 S.Ct. 49, 75 L.Ed. 156. The rule does not apply where the legislative intent and purpose are evident from the statute. Furthermore, it is doubtful that the rule should be applied where the question is not one of scope or application of a penalty, but is rather a question of the intended method of computation under the words of the statute. The rule should not be applied where it would defeat the spirit and purpose of the law or where the intent is readily ascertainable.

■ The purpose of Section 545 is to define "undistributed personal holding company income". Capital gains have never been considered a part of undistributed personal holding company income. Under the 1939 Code undistributed personal holding company income was defined by setting out components of gross income which were to be included. Capital gains were not listed. Nevertheless Federal income taxes, including tax on capital gains were allowed as a deduction. Under the 1954 Code, Section 545, excess long-term capital gain is allowed under subsection (5), as an adjustment to the basic figure which is taxable income. Federal income taxes *paid* or *accrued* are likewise allowed as an adjustment under subsection (1). The tax adjustment includes the tax on the excess long-term capital gain. Thus, under subsection (5) the adjustment provides for the deduction from the excess long-term capital gain taxes attributable to that excess. Reading the Section as a whole, the fair meaning of the words "taxes attributable" to excess long-term capital gain would be based on taxes actually imposed on such excess.

A review of the legislative history supports this view. Section 545 originated in the House of Representatives. The Way and Means Committee recognized that under the previous law capital gains tax was allowed as a deduction in computing undistributed personal holding company income while the capital gains had never been included. Thus, the personal holding company with capital gains had received an extra benefit. The House bill provided that the tax adjustment, under subsection (1), should not include the alternative capital gains tax determined under Section 1201(a) (2). The House Report No. 1337, 83d Cong. 2d Sess. (3 U.S.C.Cong. & Adm.News (1954), pp. 4315–4316) states:

"Under present law, the alternative capital gains tax is imposed in lieu of the income and personal holding company taxes. This adjustment reaches the same result. Inasmuch as the net long-term capital gain is excluded from taxable income, the alternative capital gains tax is not allowed as a deduction in computing undistributed personal holding company income."

The Senate Finance Committee made certain changes in the House bill which it called technical changes. Senate Report No. 1622, 83d Cong. 2d Sess. (3 U.S.C. Cong. & Adm.News (1954), pp. 4621, 4707). The Senate Finance Committee changes resulted in the law as it is now worded. The revision previded a method of computation which is applicable and consistent whether the alternative tax is used or not. The House bill had overlooked the situation where the alternative tax would not apply. The Senate Committee explains (p. 4961):

"Under present law, the alternative capital gains tax is imposed in lieu of the income and personal holding company taxes. This adjustment reaches the same result. A technical amendment by your committee to the House bill allows the capital gains tax as a deduction in computing un-

distributed personal holding company income but reduces the amount of the deduction for capital gains by the taxes attributable to such gains."

The only conclusion that can be drawn from the legislative history is that Congress sought to eliminate the double benefit arising from a deduction equal to the net capital gain and a deduction of the tax imposed thereon. It is further apparent from the legislative history that the actual tax paid on the excess long-term capital gain is the basis of the subtraction for taxes attributable to such excess.

In view of the foregoing, which is adopted as the Court's Findings of Fact and Conclusions of Law, the determination of the Commissioner is sustained and the Clerk is directed to enter judgment in favor of the defendant and against the plaintiff.