365 F.2d 760
 ESTATE of J. O. WILLETT, Deceased, R. S. Turner and Zoe C. Willett, Co-Executors, and Zoe C. Willett, Surviving wife, Petitioners,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 No. 21971.
 United States Court of Appeals Fifth Circuit.
 July 29, 1966.
 
 C. McVea Oliver, Monroe, La., for petitioner.
 Louis F. Oberdorfer, Asst. Atty. Gen., Tax Div., John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson, Herbert Grossman, Harry Baum, Attys., Dept. of Justice, Sheldon S. Cohen, Chief Counsel, Max G. Ansbacher, Atty., I.R.S., Washington, D. C., for respondent.
 Before WISDOM and COLEMAN, Circuit Judges, and DAWKINS, Jr., District Judge.
 WISDOM, Circuit Judge:
 
 
 1
 The narrow question for decision is whether the incorporation of a proprietorship that has previously made an election to be taxed as a corporation, under Section 1361 of the Internal Revenue Code,[1] is a taxable event, under Treasury Regulation Section 1.1361-5(b). We hold that it is not a taxable event. The regulation must yield to Congressional intent to protect unwary small businessmen from just such a tax.
 
 
 2
 J. O. Willett, the taxpayer, now deceased, was the sole owner of the "J. O. (Red) Willett Pipeline Stringing Co.," a small business performing services for the oil and gas pipeline construction industry. He elected, effective January 1, 1955, to have his proprietorship taxed as a corporation under Section 1361. Three years later, Willett incorporated his business by transferring all the assets to "J. O. (Red) Willett Pipeline Stringing Corporation" in exchange for all the capital stock of the corporation and for the corporation's assumption of the proprietorship's liabilities.
 
 
 3
 Treasury Regulation Section 1.1361-5 (b), filling a void in the statutory language, provides that the incorporation of a proprietorship that previously has made a Section 1361 election is a taxable event. The Commissioner imposed a capital gains tax of $86,764 on $338,108.83, the amount of the proprietorship's gain between the effective date of the Section 1361 election and the date of the actual incorporation. Relying on Estate of David Wein, 40 T.C. 454, aff'd, Wein's Estate v. Commissioner of Internal Revenue, 3 Cir. 1964, 330 F.2d 957 (per curiam), the Tax Court upheld the Commissioner. Estate of J. O. Willett, 23 T.C.M. 733, T.C. Memo 1964-125.
 
 
 4
 On appeal the taxpayer's representative argues that the regulation is invalid. While Treasury Regulations interpreting and implementing the Internal Revenue Code ordinarily have the force of law, courts will not enforce regulations which are unreasonable and plainly inconsistent with the Revenue Statutes. Commissioner of Internal Revenue v. South Texas Lumber Co., 1948, 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831, 836; see Commissioner of Internal Revenue v. Acker, 1959, 361 U.S. 87, 80 S.Ct. 144, 4 L.Ed.2d 127. Applying that standard, we hold that T.Reg. Section 1.1361-5(b) is invalid. (I) The tax upon incorporation of an enterprise that has made a Section 1361 election, when considered with Section 351 of the Code, destroys the Congressional remedial objective of minimizing the distorting influence of tax considerations in a small businessman's choice of business organization. (II) The regulation is at war with the Code. The policy of the Code is to refuse to find tax consequences in purely formal business readjustments which do not alter the character of the relationship between the owner and his business. The regulation can be supported only by a series of assumptions which are unreasonable constructions of the language of Section 1361.
 
 
 5
 Reluctantly, because of our respect for Treasury regulations, the Tax Court, and the Court of Appeals for the Third Circuit, we reverse.
 
 
 6
 * * *
 
 I. THE LEGISLATIVE PURPOSE
 
 7
 Congress included in the Internal Revenue Code of 1954 a new Subchapter R (Section 1361) granting certain small proprietorships and partnerships the option to be treated "as * * * domestic corporations" for federal income tax purposes. The primary impetus for the enactment of Section 1361 came from President Eisenhower's Budget Message to the Eighty-Third Congress:
 
 
 8
 Small businesses should be able to operate under whatever form of organization is desirable for their particular circumstances without incurring unnecessary tax penalties. To secure this result, I recommend that corporations with a small number of active stockholders be given the option to be taxed as partnerships and that certain partnerships be given the option to be taxed as corporations.[2]
 
 
 9
 The Report of the Senate Finance Committee recommending enactment of Section 1361 shows that the Congressional purpose mirrored the President's recommendation:
 
 
 10
 Your committee has adopted new provisions which for the first time will eliminate the effect of Federal tax laws on the form of organization adopted by certain small businesses. * * *[3]
 
 
 11
 In the Technical Amendments Act of 1958, Congress reaffirmed and expanded its commitment to the broadly remedial purpose supporting Section 1361; the Act both reinstated Section 1361 and enacted a complementary Subchapter S (Sections 1371-1377) following the President's further recommendation that small corporations be permitted to be taxed in some respects as partnerships.[4]
 
 
 12
 A number of commentators applauded the "drastic change of existing theory and practice":
 
 
 13
 There has existed a recognition for some time that it should be possible to arrive at business decisions on the basis of business and economic considerations, without being subject to the influence and frequent distortion dictated by a necessity to respond to income tax considerations. It has also become recognized that there is little substantive distinction, in the case of a closely owned business, between its conduct as a proprietorship and partnership and the manner in which it could discharge its functions if it were to don the corporate cloak.[5]
 
 
 14
 Not unexpectedly, the Department of the Treasury was unenthusiastic over the change. Upon enactment of Section 1361, the Treasury urged Congress to repeal the section retroactively.[6] The regulations were long delayed. Finally, Congress, in order to avoid unfairness to small businessmen who made early Section 1361 elections, amended the section in 1958 to permit revocation of an election within ninety days after promulgation of regulations by the Treasury.[7]
 
 
 15
 Six years after the enactment of Section 1361, the Treasury got around to issuing a set of comprehensive regulations, Sections 1.1361-1 to 1.1361-15. T.D. 6496 (October 10, 1960). They are not distinguished for their simplicity nor for their fully carrying out the Congressional purposes expressed in Section 1361.[8]
 
 
 16
 T.Reg. Section 1.1361-5(b) provides that if the owners of an enterprise make a Section 1361 election and subsequently
 
 
 17
 "* * * cease conducting the business of the enterprise in an unincorporated form the election terminates and the assets of the enterprise are deemed to have been distributed to the owners in a complete liquidation of the section 1361 corporation. The effect of the liquidation on the owners shall be determined under the provisions of section 331, 334(a), and, in appropriate cases, 341. Therefore, if a substantial part of the business is transferred to an actual corporation, the transaction shall be treated as if immediately before the transfer all of the assets of the enterprise had been distributed to the owners in a complete liquidation. Accordingly, the transfer of the assets to the actual corporation shall be treated as a transfer made by the owners in their individual capacities immediately after the liquidation."
 
 
 18
 A recent revenue ruling elaborates the regulation. Rev.Rul. 66-25, I.R.B. 1966-5, 12. The regulation's complex scheme begins with the assumption that a section 1361 election makes the electing enterprise for tax purposes an independent entity, a "Section 1361 corporation". On this assumption, the scheme proceeds as follows. Actual incorporation of the business is deemed to require liquidation of the "Section 1361 corporation". At liquidation the "Section 1361 corporation" distributes its assets to the sole "shareholder", Willett. I.R.C. Section 331(a) (1) treats amounts distributed in liquidation of a corporation as made in full payment in exchange for the stock of the corporation. Willett's gain or loss from this distribution in liquidation is subject to capital gains and losses provisions of the code. See T.Reg. Section 1.331-1(b). In computing Willett's gain, the basis of the property distributed to him is the fair market value of the property at the time of distribution. I.R.C. Section 334(a). The time of distribution of the property to Willett is "the date that the assets of the enterprise were transferred to the actual corporation." See Rev.Rul. 66-25, I.R.B. 1966-5, 12. Willett's basis on the date of actual incorporation, January 1, 1958, was $481,357.55 (assets minus liabilities). On January 1, 1955, the effective date Willett elected to have his proprietorship taxed as a corporation, its basis was $143,248.72. Therefore, the Commissioner determined that during the life of the so-called "Section 1361 corporation", Willett realized a long-term capital gain of $338,108.83; on this amount, the Commissioner imposed a tax of $86,764.
 
 
 19
 A. The regulation's taxation of the process of incorporating an electing enterprise makes Section 1361 virtually a dead letter. The Code ostensibly offers a small businessman, such as Willett, a choice of methods for achieving taxation at the lower corporate rates. The proprietor may incorporate under Section 351 with no immediate recognition of gain (or allowance of loss).[9] Or he may continue to operate his business as a proprietorship but elect under Section 1361 to pay taxes as a corporation. In fact, however, for most proprietors there is no choice. Tax-deferred incorporation under Section 351, although it may require an otherwise undesirable business reorganization, has proved to be much superior to a Section 1361 election as a means of gaining the benefits of corporate tax rates. Internal Revenue statistics show that fewer than 1000 businesses have made Section 1361 elections during the twelve years since enactment of the statute.[10] While part of the unattractiveness of a Section 1361 election is the complexity of the statute and the regulations, it is possible that the tax on incorporation in itself has been sufficient to discourage the election to be taxed as a corporation.[11] This year Congress repealed Section 1361. It is fair to say Congress recognized that the regulation's tax had made the election of "limited usefulness". The Report of the Senate Finance Committee accompanying the repealing legislation observed:
 
 
 20
 [the regulation's tax] has proved to be a trap for the unwary and may well account for a substantial proportion of the less than 1,000 businesses under this option.[12]
 
 
 21
 Congress felt so strongly about the inequity of the regulation that the repealing legislation also amended Section 1361 to permit proprietorships now being taxed as a corporation to incorporate without immediate tax consequences under corporate reorganization provisions of the Code, including Section 351.[13]
 
 
 22
 The Commissioner responds that the regulation's emasculation of Section 1361 is nevertheless consistent with Congressional purpose, because the enactors intended to confer only a "very limited and special privilege". The Tax Court, in its earlier decision sustaining the validity of the Regulation, argued that to permit a business to use both Section 1361 and Section 351 would permit taxpayers to use Section 1361 as a device to obtain unwarranted tax benefits. See Estate of David Wein, 40 T.C. at 457-458. We question whether the Congressional purpose was so niggardly. Rather, it seems to us, Congress acted upon the broadly remedial purpose of eliminating distorting tax considerations in the small businessman's choice of the kind of organization he needed in order to transact business to his advantage. It seems most unlikely that Congress enacted Section 1361 with the expectation that, when considered with Section 351, it would provide a viable alternative only to a very few of the class it purports to benefit. There is every indication Congress hoped that many businessmen would utilize the election to be taxed as a corporation. When Congress reinstated the Section in the Technical Amendments Act of 1958, the Senate Finance Committee Report stated:
 
 
 23
 Your committee believes * * * that [Section 1361] is important to small business and is likely to be extensively used when taxpayers can be sure of the tax consequences of making this election. (Emphasis added.)[14]
 
 
 24
 In short, the fact that T.Reg. Section 1.1361-5(b) makes Section 1361 virtually a dead letter, and in doing so negates the broadly remedial Congressional purpose supporting the section, contributes heavily to our decision that the regulation is plainly inconsistent with the revenue statutes and therefore is invalid.
 
 
 25
 B. The regulation is further inconsistent with the revenue statutes in that it imposes a tax on a purely formal business reorganization which the Code otherwise would exempt from immediate tax consequences. Although the Code generally requires immediate recognition of gain or loss upon the sale or exchange of property, certain sections permit consummation of formal business readjustments without immediate taxation of the participating businesses or their shareholders. Compare I.R.C. Section 1002 and Sections 351-368 and 371-374. The principal justification for this Congressional policy is that:
 
 
 26
 while such readjustments may produce changes in the conduct of a business enterprise, these changes do not involve a change in the nature or character of the relationship of the owners of the enterprise to that enterprise sufficient to warrant taxation of gain * * * or allowance of loss.[15]
 
 
 27
 It is recognized that taxation of such transactions could prove to be a financial hardship to the taxpayer-stockholder, who, having received only stock or having used cash received immediately to purchase the same type property, has no cash or liquid assets with which to pay the tax. Further, Congress was aware that imposition of a tax would discourage ordinary business transactions essential to a healthy economy.[16]
 
 
 28
 Except for the regulation's requirements, Willett was eligible in 1958 for a tax-deferred incorporation under Section 351. "Incorporation" for Willett was the purely formal maneuver of transferring all the assets of his sole proprietorship, J. O. (Red) Willett Pipeline Stringing, to the formerly dormant J. O. (Red) Willett Pipeline Stringing Corporation, in exchange for all of the capital stock of the corporation and for the corporation's assumption of the proprietorship's liabilities. Willett was sole owner of all the assets of the business before incorporation, and was the sole shareholder afterwards. Willett is now deceased. Had he lived, payment of the assessed tax (an amount about one-fifth the value of his business) might have required the liquidation of his going business.[17]
 
 
 29
 The regulation contravenes the codal policy not to find immediate tax consequences in a purely paper transaction such as Willett's incorporation. To the contrary, the policy supporting tax-deferred corporate reorganizations is like the policy supporting Section 1361 in the sense that both seek to minimize the distorting infuence of income tax considerations on a business's choice of form of organization. Thus, although the concept of permitting one business form to be taxed as if it were another form may be a drastic innovation in tax ideology, the justification for the innovation is well-imbedded in more traditional sections of the Code. The regulation's taxation of Willett's incorporation therefore is plainly inconsistent with tax policy that a purely formal business reorganization which does not alter the character of the relationship between a business and its owner is not an appropriate event in which to find immediate tax consequences.
 
 II. THE STATUTORY CONSTRUCTION
 
 30
 Having determined that T.Reg. Section 1.1361-5(b) is plainly inconsistent with the ostensible purpose of the relevant revenue statutes, we consider the Commissioner's argument that the language of Section 1361 nevertheless justifies the result the regulation achieves. That determination is complicated because the statute is silent on the specific question whether incorporation of an electing enterprise has immediate tax consequences. The Commissioner has developed from the statutory language a series of assumptions which, he concludes, justify the regulation. The essential assumptions are: (A) that subsection (m) of Section 1361 expresses a Congressional intent to exclude from all of the tax-free or tax-deferred corporate reorganization provisions of the Code an enterprise which makes an election to be taxed as a corporation; (B) that a proprietorship which makes an election to be taxed as a corporation actually becomes, for tax purposes, a corporate entity, which the regulations term a "Section 1361 corporation"; a "Section 1361 corporation" revokes the election to be taxed as a corporation, which revocation must be treated as a liquidation and taxable distribution of the assets of the "Section 1361 corporation" according to the terms of subsection (l); and (D) that the regulation is justified by express delegation of Congress to the Secretary of the Treasury of extraordinary authority to supplement, as well as interpret, Section 1361.
 
 
 31
 The Commissioner's assumptions are interwoven into the incredibly complex scheme of the regulation. However, we find that, taken together or singly, the assumptions are unwarranted constructions of the statutory language and offer no justification for the attacked regulation.[18]
 
 
 32
 A. Our unraveling begins with examination of the Commissioner's contention that subsection (m) of Section 1361 expresses a Congressional intent to preclude an electing enterprise from the benefit of all of the tax-free or tax-deferred corporate reorganization provisions of the Internal Revenue Code. Subsection (m) provides:
 
 
 33
 (m) Organizations and Reorganizations — An enterprise as to which an election has been made under subsection (a) shall not be considered a corporation, nor shall the proprietor or partners of such an enterprise be considered shareholders, for purposes of parts III and IV of subchapter C of this chapter (relating to corporate organizations, and reorganizations, and insolvency reorganizations) [with exceptions irrelevant here] * * *.
 
 
 34
 By its terms, subsection (m) says only that an enterprise shall not be considered a corporation and that its owners shall not be considered shareholders for purposes of Parts III and IV. Of the sections in Parts III and IV, 354-356 and 361-374 apply only to corporate taxpayers; subsection (m) therefore clearly prohibits a proprietorship which has made a Section 1361 election from the benefits of these sections. On the other hand, Sections 351, 357, and 358 are provisions which may be used by both individual and corporate taxpayers. Section 351(a) provides:
 
 
 35
 No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control * * * of the corporation. * * * (Emphasis added.)
 
 
 36
 Therefore, subsection (m) of Section 1361 by its terms does not make an individual proprietorship, such as Willett's, which has elected to be taxed as a corporation, ineligible for a tax-deferred incorporation under Section 351.[19] And, more broadly, subsection (m) therefore does not afford the Commissioner a broad Congressional mandate to restrict severely the utility of Section 1361 by making actual incorporation a taxable event in contravention of well-established Congressional policy.
 
 
 37
 Our construction of subsection (m) does not, as does the Treasury's interpretation, frustrate the purpose of Congress in enacting Section 1361 by making the section virtually a dead letter. Neither does our construction make subsection (m) a dead letter. Mertens' "Law of Federal Income Taxation" suggests that the purpose of subsection (m) is to keep the scope of Section 1361 within reasonable bounds.[20] Construing the subsection to preclude a proprietorship which elects to be taxed as a corporation from most but not all of the benefits of Parts III and IV of Subchapter C keeps Section 1361 reasonably within bounds.
 
 
 38
 B. The Commissioner's second assumption, i. e., that a proprietorship making a Section 1361 election actually becomes, for tax purposes, a corporate entity, raises a further obstacle to Willett's tax-deferred incorporation under Section 351. The regulations term this new entity a "Section 1361 corporation"; the Tax Court, in Estate of David Wein, supra, attributed to the entity or "pseudo-corporation" most of the characteristics of a corporation including ownership of the assets of the business. Once the existence of a "Section 1361 corporation" is acknowledged, the Commissioner argues, Section 351 is inapplicable because a "Section 1361 corporation" cannot qualify under the terms of Section 351(a) as a "person" eligible to transfer property in a tax-deferred exchange. Even if a "Section 1361 corporation" could be a "person" capable of transferring property under Section 351(a), the Commissioner further urges that the "person" thereafter in control of the transferee corporation is not the transferor ("Section 1361 corporation"), as Section 351 (a) requires, but is the former proprietor of that entity (Willett). Therefore, the concept of a "Section 1361 corporation" when supplemented with subsection (m), would completely preclude an electing enterprise from the tax-free and tax-deferred reorganization sections.
 
 
 39
 The Commissioner attempts to support his conclusion that a Section 1361 election creates a "Section 1361 corporation" by interpretation of several subsections. He points out that subsection (c) declares that an enterprise making an election "shall be considered a corporation" in all respects for purpose of income taxes, with a few exceptions. (Emphasis added.) Subsection (g) provides that ownership of an interest in an electing enterprise "shall be determined in accordance with the rules for constructive ownership of stock." (Emphasis added.) "Subsection (g)," adds the Senate Finance Committee Report accompanying the enactment of the section, "it is intended to make applicable the attribution of ownership rules * * * relating to the rules for constructive ownership of stock." (Emphasis added.)[21] And, subsections (k) and (l) provide that distributions, whether or not in liquidation, "shall be treated as a corporate liquidation", or, in the words of the Senate Report, "as if made by a corporation * * *." (Emphasis added.)[22]
 
 
 40
 We do not agree with the Commissioner's reading of the statute. Subsection (a) of Section 1361 provides that certain unincorporated businesses may elect to be taxed "as a corporation. * * *" (Emphasis added.) The Senate Report explains:
 
 
 41
 [Section 1361] is intended to permit certain proprietorships and partnerships the opportunity to be taxed as a domestic corporation while still conducting the business of the enterprise as a proprietorship or partnership. (Emphasis added.)[23]
 
 
 42
 Terms providing that an electing enterprise shall be taxed "as" a corporation or "considered" a corporation, with corporate rules "made applicable", and that its transactions are "as if made by" a corporation, plainly mean that an electing enterprise is not a corporation but instead is a proprietorship which pays taxes at corporate rates. "Section 1361 corporation" may be a convenient label for an unincorporated business which has elected under Section 1361 to be taxed as a domestic corporation. But it is no more than a label. We consider it unreasonable to permit the regulation rigidly to extend the concept of a "Section 1361 corporation" to negate the purpose of a remedial statute by disqualifying a "Section 1361 corporation" from a Section 351 tax-deferred incorporation.
 
 
 43
 C. The Commissioner's third assumption presents the question whether subsection (e) can be reasonably interpreted to mean that actual incorporation of an electing enterprise revokes the election to be taxed as a corporation, which revocation should be treated as a liquidation requiring taxable distribution of the assets under subsection (l). Subsection (e) provides, with exceptions irrelevant here, that a section 1361 election is irrevocable by the electing enterprise or by an unincorporated successor. The subsection does not say whether an election is also irrevocable by an incorporated successor to the electing enterprise. The Commissioner assumes that:
 
 
 44
 since an election to be taxed as a Subchapter R corporation is irrevocable under Section 1361 (e) * * * and that since the business of the enterprise is still continuing in other than Subchapter R form, that a [taxable] "Distribution in Liquidation" under Section 1361 (l), supra, effecting a revocation must have occurred.[24]
 
 
 45
 But it would be as reasonable to assume from the statutory language that a 1361 election is revocable by an incorporated successor to an electing enterprise. Still another inference, and perhaps the most reasonable, is that Congress purposely did not specify whether an incorporated successor can revoke a section 1361 election because, after incorporation, the enterprise continues to be taxed as a corporation just as it was before incorporation.[25] Even assuming that incorporation revokes the election, revocation does not necessarily require a "liquidation" under subsection (l). For that conclusion to have any sort of logical consistency would require our acknowledgment of the validity of one or both of the Commissioner's first two assumptions. For example, if a section 1361 election makes the electing enterprise a "Section 1361 corporation" which owns the assets of the business, then one might conclude that revocation of the election requires liquidation of the "Section 1361 corporation" requiring distribution of the assets. Or, if the concept of a "Section 1361 corporation" and subsection (m) could together be said to express a Congressional intention to preclude an electing enterprise from a tax-deferred 351 incorporation, one might conclude that liquidation of the "Section 1361 corporation" is a permissible device for furthering Congressional intention. However, we have found that neither subsection (m) nor the concept of a "Section 1361 corporation" express a Congressional intention to make incorporation of an electing enterprise a taxable event. And, quite to the contrary, we have found that imposition of a tax upon the purely formal incorporation of a small proprietorship which had previously elected to be taxed as a corporation negates broadly remedial Congressional policy. Therefore, since the Commissioner's assumption that incorporation effects a revocation which should be treated as a taxable liquidation depends so largely upon an inaccurate determination of Congressional purpose, we find it is an unreasonable construction of the language of subsection (e) of Section 1361.
 
 
 46
 D. The Commissioner's final assumption, implicit, to be sure, in the miserly result T.Reg. Section 1.1361-5 (b) achieves, is that the tax collector may resolve statutory verbal difficulties in the interest of improving the health of the fisc.[26] The Commissioner is correct in suggesting that Congress intended that the regulations have special weight in the interpretation of Section 1361. Subsections (a) and (c) of the section delegate to the Secretary of the Treasury broad power to supplement the section in addition to his general authority under Section 7805 to interpret the Code. In 1958, the Senate Finance Committee anticipated that regulations indicating "in more detail how the provision will be applied" would fill gaps and eliminate ambiguities in the statutory language.[27] Since the statute is silent on the tax consequences of incorporation of a proprietorship which has made a Section 1361 election, the Secretary's broadest rule-making authority is applicable here. But the Secretary is only a delegate of the United States Congress. And even when Congress delegates to the Secretary extraordinary authority for promulgating tax regulations, regulations must be reasonable and consistent with the revenue statutes.[28] By that test, T. Reg. Section 1.1361-5(b) is clearly invalid.
 
 
 47
 The decision of the Tax Court is reversed.
 
 
 
 Notes:
 
 
 [1]
 Pub.L. No. 89-389 89th Cong., 2d Sess. § 4(b) (April 14, 1966), repeals section 1361 of the Internal Revenue Code effective January 1, 1969. Section 4(a) of the repealing legislation prohibits section 1361 elections after April 14, 1966, and permits proprietorships and partnerships which have made section 1361 elections before April 14, 1966, to incorporate without immediate tax consequences
 
 
 [2]
 See Special Budget Message to 83d Cong. of January, 1953, Tax Recommendation No. 16, quoted in 7 Mertens, Law of Federal Income Taxation § 38B.01 (1956). However, Professor Surrey suggests that "Section 1361 * * * apparently received its main impetus and perhaps the only real reason for its existence from the situation of a particular Georgia partnership." The Congress and the Tax Lobbyists — How Special Tax Provisions Get Enacted, 70 Harv.L.Rev. 1145, 1149 (1957)
 
 
 [3]
 See S.Rep. accompanying H.R. 8300 (Internal Revenue Code of 1954), Pt. I, Sec. XXX, p. 118 in 3 U.S.Code Cong. & Ad.News (1954) at 4752-53
 
 
 [4]
 72 Stat. 1649, §§ 63, 64 (1958)
 
 
 [5]
 7 Mertens, supra note 2; see also, e. g., Jensen, Elections to be Taxed as a corporation or as an unincorporated Business, N.Y.U. 13th Inst. on Fed.Tax. 1029, 1953 (1955); Brown, Unincorporated Business Enterprises Electing to be Taxed as Domestic Corporations — Section 1361, U.So.Cal.1955 Tax.Inst. 281, 305
 
 
 [6]
 1 Rabkin & Johnson, Federal Income, Gift and Estate Taxation § 2.13, page 291a (1961)
 
 
 [7]
 72 Stat. 1649, § 63 (1958); see T.Reg. § 1.1361-15
 
 
 [8]
 E. g., Hendershott, The Slings and Arrows of Actually Incorporating a Section 1361 Corporation, 42 Taxes 668 (Oct. 1964); Olenick, To Be Or Not To Be a 1361 Corporation, 38 Taxes 139, 145-48 (Feb. 1960); Axelrad, Choice of Form: Partnership, Corporation, or In Between, N.Y.U. 19th Inst. on Fed.Tax. 361, 386 (1961)
 
 
 [9]
 Section 351(a) provides:
 (a) GENERAL RULE. — No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control * * * of the corporation. For purposes of this section, stock or securities issued for services shall not be considered as issued in return for property. * * *
 
 
 [10]
 S.Rep. No. 1007, 89th Cong., 2d Sess. 9 (1966)
 
 
 [11]
 Axelrad, supra, note 8
 
 
 [12]
 S.Rep. No. 1007, 89th Cong., 2d Sess. 9, 10 (1966)
 
 
 [13]
 See footnote 1, supra
 
 
 [14]
 S.Rep. No. 1983, Pt. III, § 67(a), 85th Cong., 2d Sess. (1958), in 3 U.S.Code Cong. & Ad.News (1958) at 4875
 
 
 [15]
 Surrey & Warren, Federal Income Taxation 1521 (1960)
 
 
 [16]
 See Levin, The Case for a Stepped-Up Basis to the Transferee in Certain Reorganizations, 17 Tax L.Rev. 511, 512 (1962); Hellerstein, Mergers, Taxes and Realism, 71 Harv.L.Rev. 254, 256-58, 276 (1957)
 
 
 [17]
 A Section 1361 corporation with assets worth substantially more than the proprietor's basis, which in a tax year subsequent to its election actually incorporates in what would normally be a Section 351 transaction, will have to actually liquidate to pay the tax deficiency arising out of its regulation-born liquidation — that is, unless it can come up with a sum of money for taxes, in addition to the usual current assessments, equal to 25 per cent of the difference between its basis at the time it made the Section 1361 election and its net worth upon actual incorporation
 To Illustrate — In Wein [v. Commissioner, supra], the proprietor's basis was $7,218.79. His net assets at the time of actual incorporation amounted to $128,820.99 so that his gain upon actual incorporation was determined to be $121,602.20, resulting in an income tax deficiency of $31,068.82 or nearly one-fourth the value of the business. Willett's tax was equally confiscatory, his basis being $481,357.55, and his deficiency being assessed at $86,764. Hendershott, supra note 8 at 669-70.
 
 
 [18]
 The commentators are generally critical of the result T.Reg. § 1.1361-5(b) achieves
 "There seems to be little reason in a rational tax scheme for [§ 1361] in the first instance. If, however, such an entity * * * is to be made available, there seems to be even less reason for treating as a taxable event the cessation of business or the transfer of a substantial part of its assets to an actual corporation." Axelrad, supra note 8.
 Another tax commentator sees the Treasury approach as conceivable, but thinks it would be "more consistent with equity and the objectives of [§ 1361] if upon incorporation "the new corporation could succeed to the accumulated earnings and profits, elections, carry-overs and bases of the enterprise without recognition of gain or loss to the entity or to its `shareholders'". Jensen, supra note 9, at 1047.
 See also Olenick, To Be or Not to Be a 1361 Corporation, 38 Taxes 139, 146-47 (Feb. 1960).
 "The Code is silent as to the effect of [incorporation of a proprietorship which has made a § 1361 election], and it was hoped that the Treasury Department would not create obstacles to an orderly transition into a complete corporate form which leaves the substance of the situation unchanged. A very different view is taken in the Regulations. 7 Mertens, Law of Federal Income Taxation § 38B.12. Hendershott, supra note 8.
 
 
 [19]
 See Hendershott, supra note 8 at 674-75
 
 
 [20]
 7 Mertens, supra note 2 at § 38B.95
 
 
 [21]
 S.Rep. accompanying H.R. 8300 (Internal Revenue Code of 1954) in 3 U.S. Code Cong. & Adm.News (1954) at 5100
 
 
 [22]
 Id. at 5101
 
 
 [23]
 Id. at 5099
 
 
 [24]
 This is the Tax Court's summary of the Commissioner's argument. Estate of David Wein, 40 T.C. at 455
 
 
 [25]
 Hendershott, supra note 8 at 670
 
 
 [26]
 Paraphrasing Eisenstein, A Critical View of the Treasury, N.Y.U. 15 Inst. on Fed.Tax 21, 28 (1957). A recent article suggests that the Treasury has made a similar assumption about provisions in Subchapter S of the Code which permit a corporation to be taxed in some respects as a partnership. The author, formerly an attorney advisor to the Tax Court of the United States, concludes:
 Subchapter S, enacted to afford tax relief to small businessmen, has had engrafted upon it congeries of complications, mostly resulting from regulations and rulings of the Internal Revenue Service, mostly in effect negating the congressional purpose of tax relief. The complexity of these regulations has resulted in the legislation's failure to accomplish another of its avowed purposes-simplicity, particularly in the areas of "classes of stock" and withdrawal of earnings. There is thus an urgent need for correction of many of the principles enunciated by the regulations. Corrective legislation would be the most effective method. For the present, however, it is probable that these principles will be seriously questioned only in litigation. The results of such litigation will determine what ultimate success the IRS will have in interpreting the statute in a manner inconsistent with its remedial purposes. Braverman, Special Subchapter S Situations — Regulations Run Rampant, 114 U.Pa.L.Rev. 680, 697-98 (1966).
 
 
 [27]
 See note 14, supra
 
 
 [28]
 Commissioner of Internal Revenue v. South Texas Lumber Co., 1948, 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831, 836; see Commissioner of Internal Revenue v. Acker, 1959, 361 U.S. 87, 80 S.Ct. 144, 4 L.Ed.2d 127