**DUNN CONSTRUCTION COMPANY, Inc., a corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 69–190.**

United States District Court, N. D. Alabama, S. D.

Feb. 23, 1971.

Drayton T. Scott and Maria B. Campbell of Cabaniss, Johnston, Gardner & Clark, Birmingham, Ala., for plaintiff.

Wayman G. Sherrer, U. S. Atty., Birmingham, Ala., Johnnie M. Walters, Asst. Atty. Gen., John F. Murray and Charles M. Merkel, Attys., Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant.

MEMORANDUM OF DECISION

POINTER, District Judge.

This case, for the recovery under 28 U.S.C. § 1346(a) (1) of income taxes alleged to have been erroneously collected from the plaintiff, was submitted to the court upon an amended complaint, answer, an agreed stipulation of facts, and documents attached to such stipulation. The sole issue for decision is the validity *vel non,* as applied to the plaintiff under the facts of this case, of Reg. § 1.-1245–6(d). The parties have furnished the court with excellent briefs in support of their respective positions.

## FINDINGS OF FACT

The court finds the facts to be as stipulated by the parties. A condensed version of the salient facts is as follows:

In 1963 taxpayer corporation sold a part of its construction business for $1,000M, realizing a gain of some $646M. Approximately $216M must be treated under I.R.C. § 1245 as non-capital gain, i. e., "ordinary income;" the balance is gain under § 1231 and hence subject to treatment as capital gain. Taxpayer, receiving 25% of the sales price in 1963 and the balance the following year, elected to report its gain on the sale under the installment method of I.R.C. § 453. Taxpayer in its return and in this proceeding insists that the § 1245 gain be pro-rated between the two years—that the gain portion of the amounts received in each year should be treated as, in turn, divided into a § 1245 and a § 1231 sub-portion. The government, consistent with Reg. § 1.1245–6(d), insists (and has collected taxes from plaintiff on the basis) that all of the gain reportable under § 453 must be treated as § 1245 income before any can be treated as § 1231 gain. In this case the amounts to be reported as § 1245 income or as § 1231 income are not in dispute—only the proper year, as is shown by the following table:

|  | Taxpayer's position | | Government's position | |
|---|---|---|---|---|
|  | 1963 | 1964 | 1963 | 1964 |
| Amount received | $250.M | $750.M | $250.M | $750.M |
| Gain portion | $161.25M | $484.75M | $161.25M | $484.75M |
| § 1245 portion | $ 54.M | $162.M | $161.25M | $ 54.75M |
| § 1231 portion | $107.25M | $322.75M | $ 0.M | $430.M |

## CONCLUSIONS OF LAW AND OPINION

Section 1245 of the Internal Revenue Code was added to the code for taxable years beginning after December 31, 1962. Revenue Act of 1962, Section 13(a) (P.L. 87–834, Oct. 16, 1962). It provides that "if section 1245 property is disposed of * * * the amount by which * * * the recomputed basis of the property * * * exceeds the adjusted basis of such property shall be treated as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231. Such gain shall be recognized notwithstanding any other provision of this subtitle." I.R.C. § 1245(a) (1).

It is without dispute that Reg. § 1.-1245–6(d), if valid, requires the type of computation made by the government —treating the gain portion of each installment to be taken into income under I.R.C. § 453 as consisting of § 1245 gain until that amount is exhausted, and only then being treated as § 1231 gain.

The taxpayer insists that these regulations, which were proposed on August 6, 1964, and adopted on July 6, 1965, are "unreasonable and plainly inconsistent with the revenue statutes." Comm'r of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948); Estate of Willett v. Comm'r, 365 F.2d 760, 761 (5th Cir. 1966).

Taxpayer places great emphasis upon a portion of the Senate committee reports—namely, the comments that:

The operation of section 1245 may, however, be affected by the taxpayer's method of accounting. For example, the gain from a disposition to which section 1245 applies may be reported by the taxpayer under the installment method if such method is otherwise available under section 453 of the code. S.Rep.No.1881, 87th Cong. 2d Sess. 281 (1962) (The Report continues: "For another example, section 1245 does not require recognition of gain or loss upon normal retirement of an asset in

a multiple asset account as long as the taxpayer's method of accounting, *in accordance with Treasury regulations,* does not require recognition of such gain or loss and clearly reflects income.")

If the regulations had attempted to preclude altogether the use of the installment method in reporting gain on a sale to which § 1245 applies, then taxpayer's reliance on the committee reports might be justified. The regulations make no such effort. Moreover, the portion of the committee reports relied upon is not free from ambiguity: one interpretation, the one which gives greater strength to the taxpayer's position, is that it means "the gain * * * to which section 1245 applies may be reported * * * under the installment method;" the other interpretation, which uses all the words of the sentence, is that "the [total] gain from a disposition to which section 1245 applies may be reported * * * under the installment method." The committee report does not say *how* the installment method is to be applied, nor does it give an example of such an application.

The whole thrust of § 1245 is to bring back into ordinary income amounts previously allowed on certain depreciable items as deductions from ordinary income—to "recapture" the earlier tax benefit. In measuring the amount of this recapture, it gives a priority to such recapture over the amounts subject to long term gain treatment—that is, the total "regular" gain (*i. e.,* amount realized less adjusted basis) is first considered as recapture income, and only the excess treated as capital gain. If, for example, a section 1245 property purchased for $1,000 in January 1961, and on which depreciation of $100 was allowable for each of the years 1961 and 1962, is sold on January 1, 1963, for $900, the total gain of $100 is deemed to be § 1245 income—the gain is not prorated to take account of the pre-1962 and post-1961 depreciation.

Reg. § 1.1245–6(d) adopts, as regards the time of inclusion of § 1245 income

being reported on the installment method, the same approach as utilized in the statute for ascertaining the amount of § 1245 income. Not only is this a consistent approach in concept, but it precludes the possibility of taxpayers converting, contrary to the obvious purpose of the section, ordinary income into capital gain by disposing of installment obligations at discounted prices. Unless adjustments in such a case were somehow required for earlier years, the taxpayer, if allowed to report § 1245 income and § 1231 gain on a pro-rata basis, might end up reporting part of his gain under § 1231 even though the total gain received was less than the depreciation due to be recaptured under § 1245. In short, the regulations are reasonable and consistent with the underlying statute; and indeed the interpretation suggested by the taxpayer and some commentators could produce results which are not consistent with the statute. But see Emory, The Installment Method of Reporting Income: Its Election, Use and Effect, 53 Cornell L.Rev. 181, 212 (1968); Branda, Problems in Recapture of Depreciation, 23 N.Y.U.Inst. 449, 478 (1965).

"The fact that the regulation was not promulgated until after the transactions in question had been consummated is immaterial." Helvering v. Reynolds, 313 U.S. 428, 433, 61 S.Ct. 971, 974, 85 L.Ed. 1438 (1941) (noting that there was no prior contrary regulation in force). It is moreover not without significance that the regulation in question *is in a real sense one interpreting both* I.R.C. § 1245 and I.R.C. § 453—and the latter statute contains a special grant of rule-making powers beyond that generally possessed by the treasury department under I.R.C. § 7805(a). See Comm'r of Internal Revenue v. South Texas Lumber Co., 333 U.S. at 503, 68 S.Ct. 695.

Reg. § 1.1245–6(d) is valid in general and as relates to the taxpayer under the facts of this case. Accordingly, the refund claimed by taxpayer premised upon the invalidity of such regulation is due to be denied. As stipulated by the parties, however, a mathematical error was

previously made in computing the amount of a proposed deficiency and the taxpayer is due a refund, on account of such error, to a refund for the year 1963 in the amount of $7,318.35 and to a refund for the year 1964 in the amount of $7,396.88, plus statutory interest according to law; and judgment will be herewith entered with respect thereto.