ANTONE E. PLESE AND SUNDENA PLESE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Plese v. Commissioner
Docket No. 3219-74.
United States Tax Court
T.C. Memo 1978-326; 1978 Tax Ct. Memo LEXIS 187; 37 T.C.M. (CCH) 1349; T.C.M. (RIA) 78326; August 17, 1978, Filed *187 Petitioners reported the gross receipts from their restaurant based on total of cash register tapes. Held: Because the cash register tapes did not accurately reflect the gross receipts, respondent was entitled to use the bank deposits method of reconstructing income. Held,further: Amount of income and bad debts determined. Held,further:Section 1.1245-6(d), Income Tax Regs., as applied to the sale of a sole proprietorship is not invalidated by the principles enunciated in Williams v. McGowan,152 F.2d 570 (2d Cir. 1945). Held,further: Negligence penalty under section 6653(a) was not properly imposed. Robert E. Kovacevich, for the petitioners. Charles L. Eppright, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined a deficiency of $ 14,155.33 in petitioners' Federal income tax and additions to tax of $ 707.77 under section 6653(a)[1] for the calendar year 1970. Concessions having been made by both parties, the following issues remain for our consideration: [2]
(1) The amount of gross receipts from petitioners' restaurant; (2) *188 Whether, pursuant to section 1.1245-6(d), Income Tax Regs., petitioners must report all gain to which section 1245(a)(1) applies prior to reporting gain to which section 1245(a)(1) does not apply on the sale of property on which the installment method is elected; (3) Whether petitioners have established that they are entitled to a deduction for bad debts in an amount in excess of that allowed by respondent; and (4) Whether any part of the underpayment of tax by petitioners is due to negligence or intentional disregard of rules and regulations. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners, Antone E. Plese and Sundena Plese (hereafter Sundena), husband and wife, using the cash *189 basis method of accounting, timely filed their joint income tax return for the taxable year 1970 with the Internal Revenue Service Center at Ogden, Utah. At the time their petition was filed, petitioners resided in Liberty Lake, Washington. Petitioners owned and managed an unincorporated restaurant business called the Stockyards Inn (hereafter the Inn).Petitioners purchased the Inn in the latter half of 1966 and operated it through March 1970. On or about April 22, 1970, petitioners sold the business to Ted R. and Lydia R. Stevens for $ 210,000. Petitioners incurred expenses of $ 10,227.57 on the sale and received a down payment of $ 35,000 with the balance of $ 175,000 secured by a real estate contract calling for monthly payments of $ 1,700 including 7-1/2 percent interest on the unpaid balance. During 1970, petitioners also received principal payments due on the contract of $ 4,957.43. Of the $ 210,000 purchase price, $ 120,000 was allocated to real estate and $ 90,000 to personal property. Petitioners' adjusted basis in the personal property was $ 27,473.95 and their adjusted basis in the real property was $ 75,708.98. Total allowed depreciation on the personal property *190 was $ 12,407.28. Petitioners computed the Inn's yearly gross receipts from a tabulation of the daily receipts on cash register tapes. In 1970, petitiones reported gross receipts of $ 50,749.66. The internal revenue agent examining petitioners' return determined that the gross receipts should have totaled $ 66,823.83. This amount was determined by the total deposits placed in certain bank accounts of petitioners and the Inn. Petitioners had closed the Inn's account in May and placed any money received after May from the Inn's outstanding accounts into a personal checking account opened shortly thereafter. All deposits placed in May or June in this latter account and totaling $ 4,216.14 were included by the agent in his computation of gross receipts. However, any deposits made after June were not included by the agent because he had been told that all of the Inn's outstanding receivables had been collected by then. The agent did not include any amounts deposited in petitioners' other personal bank accounts in his computation of gross receipts. At trial, respondent conceded that $ 5,962.02 of the $ 66,823.83 was actually deposited on December 31, 1969, and thus did not represent *191 gross receipts for 1970. No other adjustments were made to the $ 66,823.83. Petitioners also failed to report on their return, which they conceded should have been included, recapture of an investment credit on the sale of certain of the Inn's assets, reimbursement from insurance of $ 1,309.07, and gain of $ 2,448.45 on the sale of inventory. Sundena brought all of the Inn's records to an accountant, McGurk, upon whom she relied to keep her books and fill out her tax forms and determine her liability. Neither petitioner had formal education beyond tenth grade nor expertise in bookkeeping or accounting. McGurk had full access to petitioners' books and control over their records. McGurk typically was late in filling out the returns and furnished the return for 1970 to petitioners on the last day before it was due, giving petitioners little time to examine it. The Inn had two cash registers, one in the cocktail lounge and one in the restaurant.Typically, the daily food supply purchases were made in cash taken from the cash registers. At the end of each day, the cash register tapes were removed from the machine and placed with the receipts for the food purchases made by the Inn. *192 Then, at the end of the month, McGurk would pick up the receipts and tapes and record them. Petitioners also permitted customers to charge items. Such sales were not rung up on the cash registers at the time the sales were made. Rather, at the end of each month, McGurk would send invoices to the customers for the amount charged. When a check was received by petitioners in payment, it was turned over to McGurk who would then record the sales. After a check was recorded, petitioners would deposit it in the Inn's account. Some of these checks which had been deposited and credited to the account were later debited by the bank when they did not clear. Petitioners would then redeposit them. However, not all of them would clear. The agent allowed a bad debt deduction for those checks (amounting to $ 283.67) which he could identify as being redeposited in lieu of subtracting the amounts from the $ 66,823.83. Petitioners also deposited other business and personal funds into the Inn's bank account and used the account to pay some personal expenses. Often, Sundena would cash checks received by her from her rental properties, [3] place this cash in her registers, and use it to cash *193 payroll checks of her customers. All such payroll checks were deposited in the Inn's accounts. OPINION Amount of Gross Receipts
Respondent redetermined the gross receipts of the Inn using the bank deposits method. He determined that all deposits made to the Inn's account and through June to a personal account opened shortly after the Inn's account was closed represented the Inn's gross receipts. Petitioners' first contention is that respondent is not entitled to reconstruct their income because they maintained adequate books and records. Rose v. Commissioner, 70 T.C.     (1978); Green v. Commissioner,66 T.C. 538 (1976). We do not believe they have maintained adequate records, although not through their negligence or carelessness. The total gross receipts would properly be reflected by the cash register tapes plus checks paid on account by charge customers. These latter amounts were not rung up on the registers at the time of the sales. Rather, it *194 was McGurk's practice at the end of each month to send an invoice to the customers, and as is proper for a cash method taxpayer, only when the checks were received would he include the amounts in the Inn's gross receipts. Both petitioners and respondent agree that only the cash register tapes were used by McGurk in computing gross receipts in 1970. Why McGurk did not include the checks of charge customers in the 1970 receipts in apparent disregard to his past practice is unknown. Moreover, due to McGurk's death prior to trial, most of the Inn's records, including the checks received from customers on account and copies of invoices sent to the customers, could not be located. Because the amount of gross receipts was clearly understated and there were no records available to accurately ascertain the proper amount, respondent was justified in reconstructing the Inn's gross receipts. Such a determination by analysis of bank deposits has been approved in numerous cases, and the burden of proof is upon petitioners to show that respondent's determination is incorrect. Estate of Mason v. Commissioner,64 T.C. 651 (1975), affd. 566 F.2d 2 (6th Cir. 1977). Petitioners, however, apparently *195 contend that respondent has arbitrarily determined the amount of gross receipts and that the burden of proof should, therefore, be on respondent. Helvering v. Taylor,293 U.S. 507 (1935). Petitioners argue that respondent has made no attempt to subtract nonincome items from the deposits or to examine whether the deposits were in fact made from the Inn's accounts. We disagree. Respondent's agent included as gross receipts only those deposits made to the Inn's account and a personal account opened at the same time the Inn's account was closed. Bank deposits made to this latter account were included through June 1970 because petitioners advised the agent that they continued to receive payments on restaurant accounts through this period. This certainly presents prima facie evidence that such deposits were gross receipts of the Inn and respondent was not arbitrary in computing gross receipts on the basis of the deposits. Petitioners rely on Reaves v. Commissioner,31 T.C. 690 (1958), affd. 295 F.2d 336 (5th Cir. 1961), for the proposition that respondent is under an affirmative obligation to determine possible additional sources of cash which might have been deposited in the Inn's *196 account, and that if the agent could not obtain the necessary information, he could have subpoenaed records. Petitioners, however, misconstrue our holding in that case. Although respondent must reduce the income reflected in the deposits if it can be shown that such deposits were nontaxable, the burden is on petitioners to come forth with such evidence unless respondent has been arbitrary. Cf. Estate of Mason v. Commissioner,supra, at 657-658; Zarnow v. Commissioner,48 T.C. 213 (1967); Gemma v. Commissioner,46 T.C. 821 (1966). Although customers' payroll checks which petitioners had cashed were deposited into the Inn's account, these checks were paid by petitioners with cash taken from the Inn's registers. Therefore, no amounts allocable to these checks would properly reduce the amount of gross receipts reflected in the deposits. Petitioners are correct in stating that those checks received by them in payment of outstanding accounts and which were credited to the Inn's account but later debited because the customers' banks failed to honor payment would properly either reduce gross receipts or entitle petitioners to a bad debt deduction. Respondent chose the latter course with *197 respect to those checks petitioners showed were actually debited. Petitioners have not, however, offered any evidence available to them, such as deposit tickets, to substantiate any amounts beyond the $ 283.67 allowed by respondent. Also, while some of the bounced checks were redeposited by petitioners so that respondent thereby counted the same checks twice, again petitioners have offered nothing into evidence from which we can even estimate that amount. Petitioners have shown certain checks received by them from their rental properties were cashed and that this cash was placed into the registers. However, this could amount to only $ 1,200 (the monthly receipts through March at which time they no longer operated the Inn). Although we would ordinarily reduce the gross receipts by this amount, many of the Inn's suppliers were paid in cash with money taken from the cash registers. Thus, not all of the restaurant's gross receipts were deposited. Respondent determined that these cash payouts equaled or exceeded the amount of rent checks deposited. The evidence tends to support respondent's position and once again, petitioners have failed to rebut respondent's determination. Because *198 petitioners have failed to meet their burden of showing respondent's reconstruction was wrong, we hold for respondent on this issue. Bad Debt Deduction
At trial, petitioners contended they should be allowed a deduction for accounts receivable which were never paid. Because petitioners are cash basis taxpayers, these items were never included in income, and a deduction for them is not allowable. Section 1.166-1(e), Income Tax Regs.Petitioners also contend that they should be allowed a bad debt deduction beyond the $ 283.67 determined by respondent on the basis of returned checks. As we held earlier, petitioners have failed to provide any evidence in support of a greater amount and are thus not entitled any additional deduction. Amount of Section 1245 Gain
In 1970, petitioners sold the Inn for $ 210,000. In the sales agreement $ 120,000 was allocated to real property, and $ 90,000 to personal property, all of which respondent determined constituted section 1245 property. Sec. 1245 (a)(3)(A). Petitioners incurred sales expenses of $ 10,227.57 which respondent allocated to each class of property on the basis of the parties' allocation of the sales price in determining the gain *199 realized attributable to each class: Sec. 1245
Non-Sec.
Property
1245 Property
Sales Price
$ 90,000.00
$ 120,000.00
Less: Adjusted Basis
27,473.95
75,708.98
Expenses of Sale
4,383.24
5,844.33
Gain Realized
$ 58,142.81
$ 38,446.69 Total allowed depreciation on the section 1245 property was $ 12,407.28; thus, total section 1245 gain realized on the sale was $ 12,407.28. Section 1245(a). Petitioners received a $ 35,000 down payment and additional principal payments of $ 4,957.43 in 1970. [4] *200 *201 The gross profit ratio is 46 percent ($ 96,589.50 gain realized / $ 210,000.00 total contract price). [5] Thus, total gain recognized in 1970 is $ 18,380.42 (46% X $ 39,957.43); the remainder representing a return of capital. Section 453(a). In the notice of deficiency, respondent determined that petitioners had to recognize the full $ 12,407.28 section 1245 recapture before reporting any gain to which section 1245(a)(1) does not apply, relying on section 1.1245-6(d), Income Tax Regs.[6] *202 At trial and on brief, respondent conceded that because the sales price of a sole proprietorship must be "comminuted into its fragments," Williams v. McGowan,152 F. 2d 570, 572 (2d Cir. 1945); Watson v. Commissioner,15 T.C. 800 (1950), affd. 197 F. 2d 56 (9th Cir. 1952), affd. 345 U.S. 544 (1953), rehearing denied 345 U.S. 1003 (1953), an allocation of the gain must be made. This comports with our view in Monaghan v. Commissioner,40 T.C. 680 (1963), wherein we held that these principles apply to section 453. Respondent contends, however, that all that is required under Williams v. McGowan,supra, and section 1.1245-6(d), Income Tax Regs., is that the income portion of the down payment and each installment payment *203 must be allocated between gain from the sale of section 1245 property and gain from the sale of nonsection 1245 property. See also Rev. Rul. 75-323, 1975-2 C.B. 346. Applying the ratios of $ 58,142.81 / $ 96,589.50 and $ 38,446.69 / $ 96,589.50 to the gain portion of the principal payments, respondent determined that petitioners in 1970 received $ 11,076.27 which is attributable to gain on the sale of section 1245 property and $ 7,324.13 which is attributable to gain from the sale of non-section 1245 property. [7] *204 Since the income portion of the principal payments attributable to gain from the sale of section 1245 property is less than the section 1245 gain, under respondent's theory, petitioners must recognize $ 11,076.27 of section 1245 gain in 1970, and the remaning portion of section 1245 gain, $ 1,331.01, must be recognized in the following years. Petitioners contend that application of the principles enunciated in Williams v. McGowan,supra, to section 1245 invalidate section 1.1245-6(d). Petitioners' view is that the section 1245 gain must be prorated over each installment payment. Thus, petitioners would take respondent's calculations one step further: since there was only $ 12,407.28 of section 1245 gain on the sale, only 12.85 percent of each installment payment ($ 12,407.28 / $ 96,589.50) represents section 1245 gain, and thus only $ 2,360.96 of section 1245 gain should be recognized in 1970. It is not clear whether petitioners contend that Dunn Construction Co. v. United States,323 F. Supp. 440 (N.D. Ala. 1971), in upholding the validity of section 1.1245-6(d), Income Tax Regs., was erroneously decided. In any event, they attempt to distinguish that case by stating that there the taxpayer was a corporation which sold only part of its business whereas here the taxpayers sold *205 their entire interest in a sole proprietorship. We agree with petitioners that respondent (as he has conceded) must allocate the sales price between section 1245 property and non-section 1245 property. However, we do not agree that respondent need allocate the section 1245 gain. If petitioners had sold one piece of section 1245 property to which section 453 applied instead of an entire business, and section 1245 gain was realized, section 1.1245-6(d), Income Tax Regs., would clearly require the sellers to recognize the section 1245 gain prior to recognizing non-section 1245 gain. We do not understand petitioners to argue that in such an instance the principles of Williams v. McGowan,supra, would require the fragmentation of the item into section 1245 gain and non-section 1245 gain. Yet, this is the result which would follow if we adopted petitioners' position. Williams v. McGowan,supra, teaches us that the sale of a proprietorship must be considered as the sale of the individual assets which make up the business. Thus, the characterization of the gain is to be determined on an asset-by-asset basis; once this is accomplished, however, the characterization of the gain on each *206 asset is determined under the appropriate sections of the Code. In Dunn Construction Co. v. United States,supra, the taxpayer was a corporation which sold part of its construction business. It is not clear that the court there applied a unitary concept (as is applied to the sale of a corporation) to the sale of the business.In fact, the inference is that there were several assets all of which were subject to section 1231 and the court aggregated the assets rather than considering the sale of each individual asset for the sake of convenience, much in the same fashion as respondent herein has aggregated the assets into two classes. In any event, a distinction between the sale of a corporation and the sale of a proprietorship is not relevant because, as noted before, the issue is only the characterization on the sale of the asset under section 1245, not whether the assets must be characterized individually or as a whole. For these reasons, we hold that the principles enunciated in Williams v. McGowan,supra, do not invalidate section 1.1245-6(d). [8] *207 Negligence Penalty
The general rule is that the duty of filing accurate returns cannot be avoided by placing responsibility on an agento Enoch v. Commissioner,57 T.C. 781 (1972); Soares v. Commissioner,50 T.C. 909 (1968); Stone v. Commissioner,22 T.C. 893 (1954). However, as we noted in Pritchett v. Commissioner,63 T.C. 149, 174 (1974), there is an indication in some cases that a taxpayer may insulate himself from the negligence penalty if he furnishes the necessary information to his agent who prepared the return. This is particularly true when income is understated because of expert advice as to includability or deductibility. Conlorez Corp. v. Commissioner,51 T.C. 467 (1968); Brown v. Commissioner,47 T.C. 399 (1967), affd. 398 F. 2d 832 (6th Cir. 1968), cert. den. 393 U.S. 1065 (1969); Nelson v. Commissioner,19 T.C. 575 (1952). Ultimate responsibility for a correct return lies with the taxpayer, who must at least furnish the necessary information to his agent who prepared the return. Enoch v. Commissioner,supra at 802. *208 Here, petitioners brought all the Inn's receipts and records to their accountant upon whom they relied entirely to keep their books and fill out their returns. The accountant had full access to the records and petitioners were unknowledgeable in tax matters.Petitioners also had very little time to review their returns and were unaware that gross receipts were understated. Since McGurk had previously filled out their returns by properly including items purchased on credit, there was no reason for petitioners to believe he was preparing the books any differently in 1970 than he had in the past. Cf. Pritchett v. Commissioner,supra, where the taxpayer carefully reviewed the returns and the understatement should have been noticed. Moreover, although there is no doubt the insurance reimbursement, gain from inventory sales, and that at least some section 1245 gain were recognized in 1970, such that omission of these items was negligent (although honest) on the part of the accountant, we do not believe on these facts petitioners are liable for the negligence penalty. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect for the year in issue.↩
2. The amount of additional deficiency based on payments in the year of sale was also raised as an issue at trial. On brief, petitioners left any arguments to be made concerning this amount to the Rule 155 hearing, if one is necessary. The amount in dispute relates to a credit to which petitioners believe they are entitled but does not pertain to any question of fact, as such.↩
3. Total monthly rental from these properties was approximately $ 400. Sundena's rental income for 1970 was $ 4,855. Therefore, through March (when they no longer operated the Inn), a total of only $ 1,200 could have been so deposited.↩
4. Petitioners argue that they reported gain on principal payments of $ 36,557.43 on the installment sale of the Inn on their 1970 return.Petitioners seem to contend that respondent based part of the added deficiency in 1970 on the sale by adding the $ 4,957.43 received during 1970 and representing principal payments on the installment obligations to the $ 35,000 down payment. From this premise, petitioners argue that because they reported gain based on $ 36,557.43 received in 1970 that the additional deficiency should include a credit of $ 1,557.43 ($ 36,557.43 less $ 35,000.00). Respondent has not addressed the issue, but rather argues that because petitioners did not assign error to respondent's determination of gain on the sale of the Inn it should not be considered by this Court. Both parties agree that the issue may be resolved on the basis of the record. We need not reach respondent's contention.Upon analysis of the notice of deficiency, we find that respondent did not determine the deficiency pertaining to the installment sale by making an upward adjustment to the $ 36,557.43. Rather, respondent determined the deficiency based on the $ 39,957.43 received in 1970 and then subtracted the total net gain shown on Schedule D of the return. The $ 15,328.53 reported on Schedule D by petitioners based on the $ 36,557.43 they showed as principal payments would, therefore, be subtracted in full from the amount of deficiency determined. We also note that petitioners used a profit ratio of 41.93 percent to determine their gain instead of the correct ratio of 46.0 percent or the 46.05 percent respondent used. Thus petitioners reported $ 15,328.53 instead of $ 16,816.42, thereby understating the amount due on the sale by $ 1,487.89; such amount would reduce any credit to which they believed they were entitled. 5. Respondent determined in the notice of deficiency and on brief that the gross profit ratio should be 46.05 percent, but the additional.05 percent is due to an error in respondent's calculations of the amount of gain realized. In the notice of deficiency, respondent determined that the gain realized on the sale was $ 96,705.66 based on depreciation of $ 21,333.23. However, total depreciation was only $ 21,217.21; on brief, respondent determined that the gain realized was $ 96,589.50 but made no adjustment to the gross profit ratio. This adjustment to the profit ratio also results in a lower amount of gain recognized in 1970 than that determined by respondent.↩
6. (d) Installment method. (1) Gain from a disposition to which section 1245(a)(1) applies may be reported under the installment method if such method is otherwise available under section 453 of the Code. In such case, the income (other than interest) on each installment payment shall be deemed to consist of gain to which section 1245(a)(1) applies until all such gain has been reported, and the remaining portion (if any) of such income shall be deemed to consist of gain to which section 1245(a)(1)↩ does not apply. For treatment of amounts as interest on certain deferred payments, see section 483.
7. Of course, the ratios must be applied on an asset-by-asset basis.However, aggregating the assets into their respective classes would not change the end result. Also, as noted earlier, because respondent incorrectly computed the gross profit percentage, the proper amount attributable to the gain on the sale is $ 7,316.18 for non-section 1245property and $ 11,064.24 for section 1245 property. It follows that only $ 11,064.24 of section 1245↩ gain can be recognized in 1970. For purposes of convenience, respondent's computations are used in the opinion except where otherwise indicated.
8. We do not reach any other arguments which may be made concerning the regulation's validity because petitioners argued only that Williams v. McGowan,supra,dictated a finding that the regulation is invalid as applied in these circumstances. Neither petitioners nor respondent addressed the issue of the general validity of the regulation.